## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| SHANTOU RED GARDEN FOOD PROCESSING CO., LTD., SHANTOU RED GARDEN FOODSTUFF CO., LTD., and OCEAN BISTRO CORPORATION )<br><br>Plaintiffs, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant. )<br><br>AD HOC SHRIMP TRADE ACTION COMMITTEE, )<br><br>Defendant-Intervenor. ) | Court No. 20-03947 |

**SHANTOU RED GARDEN FOOD PROCESSING CO., LTD. SHANTOU RED GARDEN FOODSTUFF CO., LTD., AND OCEAN BISTRO CORPORATION'S RULE 56.2 MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD**

John J. Kenkel
Alexandra H. Salzman
J. Kevin Horgan
**deKieffer & Horgan, PLLC**
Suite 800
729 Fifteenth Street, N.W.
Washington, D.C. 20005
Tel:    (202) 783-6900
Fax:    (202) 783-6909
Email:  jkenkel@dhlaw.com
*Counsel for Plaintiffs*

Date:April 26, 2021

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................1

II.     STATEMENT PURSUANT TO RULE 56.2(c) ...................................1

        A.  The Administrative Determination under Review......................1

        B.  Issues of Law Presented...............................................................2

        C.  Summary of Arguments ...............................................................3

                1. Commerce had no authority to conduct an administrative review
                   of Shantou RGFP ................................................................3

                2. Commerce does not have the authority to conduct an SII Analysis 4

                3. Commerce's SII decision was not based on substantial evidence on
                   the record. .........................................................................4
                4. Commerce has no authority to end combination rates for Red Garden...5
                5. Commerce erroneously added the values in "TRUCKRVNU" to
                   U.S. price, when it should have been deducted ...............5

III.    STATEMENT OF FACTS RELEVANT TO THE ISSUES .................6

IV.     STANDARD OF REVIEW .....................................................................6

V.      ARGUMENT .........................................................................................15

        A.  SUBSTANTIAL EVIDENCE ON THE RECORD DEMONSTRATES
            THAT SHANTOU RGFP (1) WAS REVOKED FROM THE ORDER IN
            2013 BUT FOR AN ERROR IN WHICH "SHANTOU" WAS NOT
            INCLUDED IN ITS NAME;  AND (2) WAS COLLAPSED WITH
            SHANTOU RGFS IN THE LTVF INVESTIGATION, CREATING A
            SINGLE ENTITY, AND THAT SINGLE ENTITY WAS EXCLUDED
            FROM THE ORDER IN 2013 ...................................................10

                1. Introduction ..................................................................10
                2. Relevant facts for this issue...........................................10
                3. Shantou RGFP was revoked from the Order in 2013, regardless
                   whether Commerce's non-inclusion of "Shantou" in its name was
                   unintentional or intentional ...........................................12
                4. Substantial evidence in this entire proceeding, dating back to the
                   LTFV investigation, supports only one conclusion: Shantou RGFP
                   was collapsed with Shantou RGFS in the LTFV investigation and

removed from the dumping order in 2013, and remained removed
from the dumping order in AR 2018-2019 ......................................14

    a.  Commerce has treated Shantou RGFP and Shantou RGFS
as a single entity since the LTFV investigation ..................14

    b.  Commerce has the authority to modify the Section 129
revocation and should have used it. .....................................21

**B.  COMMERCE DOES NOT HAVE THE AUTHORITY TO CONDUCT A
SUCCESSOR-IN-INTEREST INQUIRY AS PART OF THE
ADMINISTRATIVE REVIEW.  ALTERNATIVELY, SINCE
COMMERCE DID NOT COMPLY WITH ITS OWN REGULATIONS,
ITS SII DECISION IS NOT IN ACCORDANCE WITH LAW. ..............25**

1.Commerce did not have authority to conduct its SII Inquiry. ......25

**C.  ALTERNATIVELY, IF THE COURT UPHOLDS THE LEGALITY OF
COMMERCE'S ABILITY TO CONDUCT AN SII ANALYSIS, ITS
ANALYSIS WAS NOT BASED ON SUBSTANTIAL EVIDENCE ON
THE RECORD.  .................................................................................28**

1.Commerce's entire analysis is predicated on it comparing Shantou
RGFP to a fictitious company in the Section 129 revocation, Red
Garden Food Processing Co., Ltd. (without "Shantou" preceding
it)...............................................................................................27

2.Alternatively, if the court allows the SII analysis, Shantou Red
Garden met its burden to prove it operates substantially the same
as it did in the POI of the LTFV investigation ...............................29

**D.  COMMERCE'S ATTEMPT TO DEACTIVATE THE COMBINATION
RATES CITED IN THE SECTION 129 REVOCATION IS WITHOUT
MERIT.  ............................................................................................34**

1.The Facts..................................................................................34

**E.  COMMERCE ERRONEOUSLY ADDED THE VALUES IN
'TRUCKRVNU' TO U.S. PRICE, WHEN THEY SHOULD HAVE
BEEN DEDUCTED.  ..........................................................................35**

1.The Facts..................................................................................35

2.Argument. ................................................................................36

**VI.     CONCLUSION** ..............................................................................36

# TABLE OF AUTHORITIES

## CASES

*Atlantic Sugar, Ltd. v. United States,* 744 F.2d 1556, 1562 (Fed. Cir. 1984) ................................8,23,36

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984) .............................. 6,8

*Civil Aeronautics Board v. Delta Air Lines, Inc. 367 U.S. 316, 325-326 (1961)* ........................................ 9

*Consolidated Edison Corp. v. Labor Board,* 305 U.S. 197, 229 (1938) ...................................................7

*Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983) .......................................................8

*Dorbest Ltd v. United States,* 462 F. Supp. 2d 1262, 1302 (Ct. Int'l Trade 2006) ...................................9

*Elkem Metals Co. v. United States,193 F. Supp. 2d 1314, at 1321*............................................................. 22

*Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1038 (Fed. Cir. 1996) .................................................7

*Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) ...............................................7

*Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244, 88 L. Ed. 1250, 64 S. Ct. 997 (1944)*.................................................................................................................................................. 22,25

*Jinan Yipin Corp. v. United States*, 637 F. Supp. 2d 1183, 1192 (Ct. Int'l Trade 2009) .........................8

*Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ................................9,31,32

*National Cable & Telecommunications Ass'n v. BrandXInternet Services,* 545 U.S. 967, 982-983 (2005) .........................................................................................................................................................6

*Novosteel SA v. United States, 284 F.3d 1261, 1276 (Fed. Cir. 2002)*............................................. 9,31,32

*PesqueraMares Australes Ltda. v. United States,* 266 F.3d 1372, 1379 (Fed. Cir.2001) .........................7

*East Sea Seafoods LLC v. United States, 703 F. Supp.2d 1336, 1350-53 (CIT 2010)*.......................... 25,26

*Shakeproof Assembly Components Div. of Ill. Tool Works v. United States,* 268 F.3d 1376, 1382 (Fed. Cir. 2001) .......................................................................................................................................9

*Skidmore v. Swift & Co.,* 323 U.S. 134 (144) ......................................................................6,7,22,23

*Timex V.I., Inc. v. United States,* 157 F.3d 879, 882 (Fed. Cir. 1998) .....................................................6

*Tokyo Kikai Seisakusho, Ltd. v. United States,* 529 F.3d 1352, 1360-61, (CAFC 2008) .......................... 24

*Tung Mung Dev. Co., v. United States,* 354 F.3d 1371, 1378 (Fed. Cir. 2004) ........................................9

*United States v. Mead Corp.,* 533 U.S. 218, 228 (2001) ...............................................................7

*Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477 (1951) ........................................................7,23

*USX Corp. v. United States,* 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987) ...............................8

*Wheatland Tube Co. v. U.S.,* 495 F.3d 1355, 1361 (Fed. Cir. 2007) ...........................................7

## STATUTES

19 CFR 351.216 ..........................................................................................................................26

19 CFR 351.216(b) .....................................................................................................................28

19 CFR § 351.224(c) ..................................................................................................................20

19 U.S.C. §1516a(b). ...................................................................................................................6

19 U.S.C. §1516a(b)(1)(B). .........................................................................................................7

19 U.S.C. § 1516a (a)(2)(B)(iii). ..................................................................................................1

19 U.S.C. § 1671-1671(f) ............................................................................................................6

## ADMINISTRATIVE DECISIONS

*Certain Frozen Warmwater Shrimp From the People's Republic of China and Diamond
Sawblades and Parts Thereof From the People's Republic of China: Notice of
Implementation of Determinations Under Section 129 of the Uruguay Round Agreements
Act and Partial Revocation of the Antidumping Duty Orders, 78 Fed. Reg. 18958 (March
28, 2013)* ...............................................................................................................................*11,19*

*Certain Frozen Warmwater Shrimp From the People's Republic of China: Notice of Final
Results and Rescission, in Part, of 2004/2006 Antidumping Duty Administrative and New
Shipper Reviews 72 Fed. Reg. 52049 (September 12, 2007)*.............................................16

*Certain Frozen Warmwater Shrimp from the People's Republic of China: Final Results of
Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-
2019, 85 Fed. Reg., 83,891, (December 23, 2020)* ..................................................1,16

*Certain Frozen Warmwater Shrimp from the People's Republic of China: Preliminary
Results of Antidumping Duty Administrative Review and Preliminary Determination of No
Shipments; 2018-2019, 85 Fed. Reg. 12,894, (March 5, 2020)*.............................................*1,2,16*

*Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp From the People's Republic of China* 70 Fed. Reg. 5149 (February 1, 2005) ...........................................................................................10

*Notice of Final Determination of Sales at Less Than Fair Value: Certain Frozen and Canned Warmwater Shrimp From the People's Republic of China* 69 Fed. Reg. 70997 (December 8, 2004) ...........................................................................................................................................10

## I.  <u>INTRODUCTION</u>

The U.S. Department of Commerce failed to use substantial evidence on the record, was arbitrary and capricious, abused of its discretion, and otherwise was not in accordance with law in its calculation of a dumping margin for Plaintiff Shantou Red Garden Food Processing Co., Ltd. ("Shantou RGFP") in its administrative review of certain frozen warmwater shrimp from the People's Republic of China.

## II.  <u>STATEMENT PURSUANT TO RULE 56.2(c)</u>

### A.  The Administrative Determination under Review

This action is brought pursuant to 19 U.S.C. § 1516a (a)(2)(B)(iii) to contest the Commerce Department's ("Commerce," or "the Department," or "DOC") *Final Results* of its 2018-2019 administrative review of the antidumping duty (AD) order, issued  December 17, 2020, and published December 23, 2020*.  Certain Frozen Warmwater Shrimp from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019,* 85 Fed. Reg., 83,891, (December 23, 2020); P.R. 186 (unpublished) ("*Final Results*"); P.R. 190 (published); and accompanying Issues and Decision Memorandum ("IDM") (December 17, 2020) P.R. 185;   ("P.R. refers to the Department's public record; "C.R." refers to the confidential record),  Commerce determined a rate of 58.96 percent.

This decision was based primarily on the Department's *Preliminary Results.  Certain Frozen Warmwater Shrimp from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments;*

2

*2018-2019,* 85 Fed. Reg. 12,894, (March 5, 2020); ("*Preliminary Results*"). P.R. 137

(published); and accompanying Decision Memorandum (February 28, 2020) ("PDM") P.R. 134.

**B.  Issues of Law Presented**

There are five issues presented.  First, whether the Department's conduct of an

administrative review of Shantou RGFP was an *ultra vires* act and, therefore, void *ab initio*, due

to the fact that Commerce, in 2013, revoked the antidumping duty order against Shantou RGFS

and RGFP (without "Shantou" preceding the name) due to an error, either clerical or otherwise.

Alternatively, Shantou RGFP was revoked from the Order also because it had been collapsed

with Shantou Red Garden Foodstuff Co., Ltd. (Shantou RGFS) in the LTFV investigation,

Commerce finding that they should be treated as a single entity and, therefore, should have been

treated as excluded from the Order for that reason as well.  Plaintiffs argue that Commerce's

decision was not predicated on substantial evidence on the record, was arbitrary and capricious,

an abuse of discretion, and otherwise not in accordance with law.

Second, whether Commerce had the authority to conduct a "successor-in-interest" ("SII")

investigation, under the authority of its changed-circumstances regulation, without meeting the

requirements of that regulatory provision.  Substantial evidence on the record demonstrates that

Commerce did not make a reasonable decision to conduct this analysis.  Therefore, its decision

was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

Third, assuming, *arguendo*, that Commerce had the authority to conduct an SII inquiry,

whether it made a reasonable decision that Shantou RGFP in the underlying administrative

review is not the same Shantou RGFP that fully participated in the LTFV investigation and that

was subject to the 2013 revocation.  Substantial evidence on the record demonstrates that

3

Commerce did not base its decision on substantial evidence, was arbitrary and capricious, abused its discretion, and its decision was otherwise not in accordance with law.

Fourth, whether Commerce's decision in the 2013 revocation of the Order, that combination rates exist and could be terminated (deactivated) in the underlying administrative review, was based on substantial evidence on the record and whether it was reasonable and otherwise in accordance with law.

Finally, whether Commerce appropriately treated a reduction of U.S.-based truck expenses contained in ocean freight through-rate costs (contained in the "TRUCKRVNU" field), by adding them to the ocean freight costs, rather than deducting them, predicated on substantial evidence on the record.

### C.  Summary of Arguments.

### 1.  Commerce had no authority to conduct an administrative review of Shantou RGFP

. Plaintiffs argue that the main issue is that Commerce refuses to acknowledge that it made an error, either unintentional or intentional (fraud), in 2013, in rescinding the antidumping duty order against RGFP, by not inserting "Shantou" before "Red Garden Food Processing Co., Ltd." Red Garden (without "Shantou" before its name) never existed, never participated in the LTFV investigation, did not undergo verification, and, therefore, never was subject to the antidumping duty order, much less to the revocation of that order in 2013. Commerce cites no statutory authority to impose a dumping order on a non-existent company, much less revoke a dumping order against s a fictitious company. There is not even a scintilla of evidence, much less substantial evidence on the record to support Commerce's decision. It is arbitrary and capricious as well as an abuse of discretion for Commerce to refuse to admit to a typographical

4

error by not inserting "Shantou" prior to RGFP's name in the revocation order in 2013.

Moreover, there is no statutory deadline to correct a typographical error.

This decision either ignored or misinterpreted substantial evidence on the record that (1) both Red Garden companies were subject to the less than fair value ("LTFV") investigation, fully participated in it, underwent a successful verification, and were the subject of Commerce's final determination and antidumping duty order in 2004-2005, (2) are no longer subject to the antidumping duty order because Commerce rescinded the order against them in 2013; (3) Shantou RGFP in the underlying administrative review is the same company that existed in 2005 and 2013, and (4) most importantly, "Red Garden Food Processing Co., Ltd.," could not have been revoked from the dumping order, because it does not exist and never existed

## 2. **Commerce does not have the authority to conduct an SII Analysis**.

Since RGFP is the same company, with the same majority owner, same general manager, same address, same production facilities, etc., that it was in 2004-05 and 2013, it cannot be the successor-in-interest to itself.  There was no legitimate reason for Commerce to institute a SII inquiry.  RGFP did not request a changed circumstances review or successor-in-interest analysis. Thus, substantial evidence on the record does not support Commerce's decision to conduct an SII inquiry.  *See* IDM, Comment 3.   Thus, this decision is not in accordance with law.   Moreover, Commerce claims it conducted its SII analysis within the context of the regulation for changed circumstances review.  Commerce, however, failed to follow its regulation.  Therefore, its analysis is not in accordance with law.

## 3. **Commerce's SII decision was not based on substantial evidence on the record**.

Substantial evidence supports Plaintiffs' argument that RGFP in the underlying review is

5

essentially the same company as it was in 2004-05 and 2013.  Again, since RGFP is the same

company, with the same majority owner, same general manager, same address, same production

facilities, etc., that it was in 2004-05 and 2013, it is essentially operating as the same business.  It

cannot be the successor-in-interest to itself.    Accordingly, Commerce's decision was not based

on substantial evidence on the record and is not in accordance with law.

**4.  Commerce has no authority to end combination rates for Red Garden.**

Commerce cited no statutory or regulatory authority requiring, or even allowing, it to

eliminate combination rates cited in the exclusion order from the instant proceeding.  While

RGFP could not find any activity by these companies during this administrative review, this does

note preclude these companies, if indeed inactive, from renewing business operations and

operating in conjunction with the Red Garden companies in the future.  Commerce cited not a

scintilla of evidence, much less substantial evidence on the record, granting it authority to make

this modification.

**5.  Commerce erroneously added the values in "TRUCKRVNU" to U.S. price, when it
should have been deducted**

Commerce completely misunderstood the explanation for this field.  In essence, the ocean

carrier would give RGFP a "through rate" from its warehouse to the customer's warehouse in the

U.S. RGFP paid for that full service and Commerce deducted it from gross unit price. For certain

U.S. sales, however, the ocean carrier was unable to deliver to the customer's warehouse.

Rather, it could only deliver to the U.S. port.  Because of that, it gave a refund to RGFP for that

lack of service between the U.S. port and customer's warehouse.  This constitutes

income/revenue to RGFP which Commerce should have added to the gross unit price.  Instead,

Commerce deducted it from the gross unit price.  This artificially increased the dumping margin,

6

thereby not resulting in calculation of a dumping margin as accurately as possible.

### III. <u>STATEMENT OF FACTS RELEVANT TO THE ISSUES</u>

Shantou RGFP will address the specific facts separately within each issue, below.

The Department published the initiation notice on November 3, 2017, 82 Fed. Reg.
52,268 (November 3, 2017).   P.R. 3.

### IV. <u>STANDARD OF REVIEW.</u>

The courts will hold unlawful Commerce determinations that are unsupported by

substantial evidence on the record, or are not otherwise in accordance with law.  19 U.S.C.

§1516a(b). To determine whether Commerce's interpretation and application of 19 U.S.C. §

1671-1671(f) is "in accordance with law," the courts review the statute to determine whether

"Congress has directly spoken to the precise question at issue." *Chevron U.S.A. Inc. v. Natural*

*Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984). "To ascertain whether Congress had an

intention on the precise question at issue, {the Court} employ{s} the 'traditional tools of statutory

construction.'" *Timex V.I., Inc. v. United States,* 157 F.3d 879, 882 (Fed. Cir. 1998) (citing

*Chevron,* 467 U.S. at 843 n.9). In addition, the tools of statutory construction "include the

statute's structure, canons of statutory construction, and legislative history." *Id.* Where a court has

previously interpreted a statute and the court holds that its construction of the statute flows from

the unambiguous terms of the statute and leaves no room for agency discretion, the court's

interpretation is binding on the agency. *National Cable & Telecommunications Ass'n v.*

*BrandXInternet Services,* 545 U.S. 967, 982-983 (2005).

7

If the court determines that the statute is silent or ambiguous with respect to the specific issue, the question then becomes what level of deference is owed Commerce's interpretation, the traditional second prong of the *Chevron* analysis, *Chevron,* 467 U.S. at 842-43, or the less deferential regime set forth in *Skidmore v. Swift & Co.,* 323 U.S. 134 (144). *See United States v. Mead Corp.,* 533 U.S. 218, 228 (2001). The Federal Circuit has held that *Chevron* deference is owed Commerce's statutory interpretations as to appropriate methodology. *PesqueraMares Australes Ltda. v. United States,* 266 F.3d 1372, 1379 (Fed. Cir. 2001). That analysis entails determining whether Commerce's construction of an ambiguous statute is "permissible." *See Chevron,* 467 U.S. at 843. A "permissible" construction under *Chevron* is understood in terms of reasonableness; only reasonable interpretations will be upheld by the Court. *See Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1038 (Fed. Cir. 1996) *('Chevron* requires us to defer to the agency's interpretation of its own statute as long as the interpretation is reasonable."). Not unlike the first prong of *Chevron,* to determine reasonableness, courts look to the express terms of the statute, the objectives of the statute, and the objectives of the statutory scheme as a whole. *Wheatland Tube Co. v. U.S.,* 495 F.3d 1355, 1361 (Fed. Cir. 2007).

Under the standard of review established in *Skidmore,* "{t}he weight {accorded to an administrative} judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.,* 323 U.S. 134, at 140.

The Court will uphold a final determination by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C.

§1516a(b)(1)(B).  "[S]ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), *quoting Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938).  Furthermore, "substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotations omitted). Thus, this Court has stated that "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to [   ] view.'" *Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983) *quoting Universal Camera*, 340 U.S. at 488.

Moreover, the Commerce determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987).  The substantial evidence standard requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (citation omitted).

Commerce also must make its decisions based on a fair and balanced comparison of the data.  To do otherwise is arbitrary and capricious. *See Chevron, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984) at 1562 ("substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence.") *See also,*

9

*Jinan Yipin Corp. v. United States*, 637 F. Supp. 2d 1183, 1192 (Ct. Int'l Trade 2009) (holding that Commerce failed "to make adequate findings, based on substantial evidence, to support its determination to disregard summarily the import and export data from the *Market Research Report*.  Nor did Commerce undertake a <u>qualitative</u> comparison of the NHRDF data with the import data or the export data in the *Market Research Report* to produce a finding or findings that the court could affirm."  *Id.* (emphasis added).

Commerce is required to objectively evaluate all data on the record.  Thus, it must hold its preferences to the same test as it uses to evaluate respondent's proffered data.  This analysis must consider the strengths and weaknesses of all the data and then choose the best available information.  *See, e.g., Dorbest Ltd v. United States*, 462 F. Supp. 2d 1262, 1302 (Ct. Int'l Trade 2006) (holding that Commerce must justify its decisions).

In addition, Congress intended that Commerce calculate dumping margins as accurately as possible and use the best available information.  *See Shakeproof Assembly Components Div. of Ill. Tool Works v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001).

Further, it is axiomatic that Commerce may not exert its authority in an arbitrary or capricious manner.  *See, e.g., Tung Mung Dev. Co., v. United States*, 354 F.3d 1371, 1378 (Fed. Cir. 2004).

Moreover, when substantial evidence is not utilized, such action is tantamount to the use of speculation in making a determination. *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel SA v. United States,* 284 F.3d 1261, 1276 (Fed. Cir. 2002) (internal quotation marks omitted)).

10

Finally, the government may not continue a mistake once notified. *Shein v. United States*, 102 F. Supp. 320 (U.S. Distr. Ct. NJ); aff'd. 343 U.S. 944 (1952). ("If upon deeper research, fuller reflection and consideration the judicial or quasi-judicial body would see a mistake but persist in it, this would amount to mere obstinacy or stubbornness and foster the <u>highest</u> form of misjustice.") (Emphasis added).

Moreover, the courts have held that there is an implied authority for agencies to accept petitions for reconsideration, even though no statutory authority exists. *Civil Aeronautics Board v. Delta Air Lines, Inc.* 367 U.S. 316, 325-326 (1961).

## V.   <u>ARGUMENTS</u>

**A.   SUBSTANTIAL EVIDENCE ON THE RECORD DEMONSTRATES THAT SHANTOU RGFP (1) WAS REVOKED FROM THE ORDER in 2013 BUT FOR AN ERROR IN WHICH "SHANTOU" WAS NOT INCLUDED IN ITS NAME;  AND (2) WAS COLLAPSED WITH SHANTOU RGFS IN THE LTVF INVESTIGATION, CREATING A SINGLE ENTITY, AND THAT SINGLE ENTITY WAS EXCLUDED FROM THE ORDER IN 2013.**

### 1.   **Introduction**

Whether Commerce's decision to initiate an administrative review of Shantou RGFP was *ultra vires*, causing the initiation to be void *ab initio*, is established by the collective proceedings of this subject merchandise since the LTFV investigation in 2004-05.

### 2.   <u>Relevant facts for this issue.</u>

1. Commerce published its final determination in the LTFV Investigation December 8, 2004. 69 Fed. Reg. 70997.   Commerce listed only Shantou RGFS in the Federal Register notice.  Shantou RGFP fully participated in the investigation and underwent verification. No company named "Red Garden Food Processing Co., Ltd." (without "Shantou'

11

preceding its name) participated in the LTFV investigation or obtained any dumping

margin.  Concurrently, Commerce issued its Issues and Decision Memorandum,

November 29, 2004.  Commerce collapsed the two Red Garden companies.

2. Commerce issued an amended final determination in the LTFV investigation and the

   antidumping duty order February 1, 2005.  70 Fed. Reg. 5149.

3. Shantou RGFP and Shantou RGFS sued Commerce in 2005.

4. Commerce issued the preliminary results of the <u>first</u> administrative review (2004-2006),

   72 Fed. Reg. 52049 (September 12, 2007).  This is the <u>first Federal Register notice to</u>

   <u>include Shantou RGFP, and it is spelled correctly</u>: "Shantou Red Garden Food Processing

   Co., Ltd."  This is the first of many Federal Register notices in which Commerce spelled

   Shantou RGFP's name correctly.

5. This Court issued a decision in Red Garden's lawsuit October 23, 2012.  Slip Op 12-133.

6. As a result of this opinion, Commerce issues a so-called "Timken Notice"  77 Fed. Reg.

   66434 (November 5, 2012).  <u>Commerce correctly spelled Shantou RGFP's name</u>,

   including "Shantou" preceding RGFP.

7. Commerce issued a Section 129 Decision revoking the antidumping duty order against

   Shantou Red Garden Food Stuff Co., Ltd., and Red Garden Food Processing Co., Ltd.

   (without "Shantou" preceding RGFP).  78 Fed. Reg. 18958 (March 28, 2013).

8. Commerce initiated the administrative review for 2018-19. 84 Fed. Reg. 18777 (May 2,

   2019).  PR 81.

9. Shantou RGFP submitted a "no sales" certificate (May 15, 2019) (PR 16).

10. Commerce issued a memorandum to the file regarding a "no shipment inquiry."  July 23,

12

2019.  CR.1; PR  26.

11. Commerce issued another memorandum to the file regarding entries by Shantou RGFP.

    July 25, 2019.  CR 2; PR 27.

12. Commerce issued another internal memorandum, to Alex Villnueva, {*sic*} regarding

    entry documentation of Shantou RGFP shipments.  July 25, 2019.  CR 3; PR 28.

13. Shantou RGFP submits letter to Commerce responding to Commerce's July 30, 2019,

    memoranda. CR 4; PR 29.

14. Commerce issues letter to Shantou RGFP requesting clarification of its name.  August 8,

    2019.  CR 5; PR 30.

15. Shantou RGFP responds to Commerce's August 8, 2019 letter requesting clarification of

    Red Garden's names.  August 13, 2019.  CR 6; PR 31.

16. Commerce issues initial questionnaire to Shantou RGFP.  October 7, 2019.  PR 51.

17. Shantou RGFP rebuts domestic producers' letter of September 6, 2019.  October 18,

    2019.  CR 7-8; PR 66-67.

18. Commerce issues Preliminary Successor-In-Interest Determination. February 28, 2020.

    CR 83; PR 136.  Commerce found that Shantou RGFP is not the successor-in-interest to

    the company named in the 2013 revocation of the dumping order, Red Garden Food

    Processing Co., Ltd. (without "Shantou" preceding it).

19. Commerce issues memorandum regarding Affiliation and Collapsing of Shantou RGFP

    with Shantou RGFS.  April 29, 2020.  CR 96; PR 158.

20. Commerce issues Decision Memorandum accompanying preliminary results. February

    28, 2020. PR 134.

13

21. Commerce publishes preliminary results. 85 Fed. Reg. 12894 (March 5, 2020).  PR 137.

22. Shantou RGFP submits Case Brief. May 13, 2020.  Later submitted a redacted version.
    CR 102-103; PR 175-176.

23. Shantou RGFP submits Rebuttal Brief.  May 20, 2020.  CR 101; PR 168.

24. Commerce releases the Issues and Decision Memorandum accompanying Final Results.
    December 17, 2020.  PR 185.

25. Commerce published Final Results December 23, 2020. 85 Fed. Reg. 83891.  PR. 190.


### 3. Shantou RGFP was revoked from the Order in 2013, regardless whether Commerce's non-inclusion of "Shantou" in its name was unintentional or intentional.


First, Plaintiffs argue that in the 2013 revocation of the Order, Commerce made an error, whether typographical or intentional (fraud) by not including "Shantou" preceding RGFP's name.  This error is obvious because RGFP (without "Shantou" preceding its name) never existed, did not participate in the LTFV investigation, did not undergo verification, etc.  Thus, Commerce intended to revoke the order against Shantou RGFP in addition to Shantou RGFS in 2013.

Second, moreover, even if Commerce does not admit that Shantou RGFP was specifically excluded from the Order, it was implicitly excluded since, in the LTFV investigation, Commerce determined Shantou RGFP and Shantou RGFS were so closely joined that they should be treated as a single entity, i.e., collapsed. This second point is discussed separately, *infra*.  Therefore, Shantou RGFP nevertheless benefitted from Shantou RGFS' revocation in 2013, because Commerce treated them as a single entity when it collapsed them.

14

There is no question that the Order was revoked for Shantou RGFS, the parent company of Shantou RGFP.

The reasons for this argument are the following.  First, in the LTFV investigation, two affiliated companies were mandatory respondents: (a) Shantou Red Garden Foodstuff Co., Ltd. ("Shantou RGFS") and Shantou Red Garden Food Processing Co., Ltd. ("Shantou RGFP"); these companies were referred to by various shortened names throughout the investigation simply for ease of reference, e.g., "Red Garden," "RGFS," and "RGFP."  Shantou RGFS was the exporter in the period of investigation ("POI").  Commerce found the two companies were affiliated under the statute and collapsed them, treating them as a single entity; the final results only named Shantou RGFS, since of the two companies, only it exported subject merchandise in the period of investigation ("POI").

Commerce even visited Shantou RGFP's headquarters and verified its submissions, including its business license, which contains the full legal name of the company.

Moreover, every questionnaire issued in the LTFV investigation correctly cited the full legal name of Shantou RGFP.

Commerce has not justified either at any time (1) how it could determine a dumping margin in the LTFV investigation for a fictitious company, and (2) how it could revoke an Order against a fictitious company.

Additionally, every Federal Register notice between the Order and the revocation cited the full and correct legal name of Shantou RGFP.

These facts are supported by substantial evidence on the record.  Commerce's decision, therefore, was not based on substantial evidence on the record, not reasonable, was arbitrary and

15

capricious, and otherwise not in accordance with law.

      **4.**      **Substantial evidence in this entire proceeding, dating back to the LTFV investigation, supports only one conclusion: Shantou RGFP was collapsed with Shantou RGFS in the LTFV investigation and removed from the dumping order in 2013, and remained removed from the dumping order in AR 2018-2019.**

      **a.**      **Commerce has treated Shantou RGFP and Shantou RGFS as a single entity since the LTFV investigation.**

Commerce investigated an exporter, Shantou Red Garden Foodstuff Co., Ltd., (Shantou RGFS) in the 2004 antidumping investigation on frozen shrimp from China. It had a related company, Shantou Red Garden Food Processing Co., Ltd. (Shantou RGFP) that also fully participated and underwent verification. These facts are further developed in Shantou RGFP's October 18, 2019, letter (CR 7-8; PR 66-67) to Commerce, which shows, *inter alia*, Commerce continuing reference to Shantou Red Garden Food Processing Co., Ltd.

 As in all proceedings, companies with long names are often subject to a shorthand appellation, such as "RGFP" and "Red Garden," which were also continuously used by all parties, including Commerce, throughout the investigation.  It is obvious from the administrative record of the LTFV investigation that no company was legally registered as simply "RGFP" or "Red Garden" either during the LTFV investigation or since.

Commerce issued both preliminary and final determinations for Shantou RGFS.  Shantou RGFS argued that its related company, Shantou Red Garden Food Processing Co., Ltd., (Shantou RGFP) should be collapsed with it for purposes of the investigation.  Commerce agreed and issued a collapsing memorandum to that effect.  Both Shantou RGFS and Shantou RGFP participated in the investigation.  Both companies responded to the Department's questionnaires

16

and submitted their business licenses, with English translations, citing their full legal names.

Both company's submissions were verified by the Department.  No other company with a name

similar to theirs either (1) filed an entry of appearance, (2) filed any submission, i.e., no record

evidence, (3) had a verification conducted on this non-existent evidence, or (4) had a preliminary

or final determination which included its name, much less an antidumping duty order issued

citing its name.  Thus, the administrative record of the investigation contains not even a scintilla

of evidence regarding a company which Commerce now refers to simply as "Red Garden Food

Processing Co., Ltd." (without "Shantou" preceding its name).

　　　This fact, that Shantou Red Garden Food Processing Co., Ltd., was the intended company

to be collapsed with Shantou RGFS, first in the final determination and then in the amended final

determination/antidumping duty order is confirmed by Commerce final results in the first

administrative review.  *See Certain Frozen Warmwater Shrimp From the People's Republic of*

*China: Notice of Final Results and Rescission, in Part, of 2004/2006 Antidumping Duty*

*Administrative and New Shipper Reviews* (under "Background," Commerce cites the names of

the companies being reviewed "(4) <u>Shantou</u> Red Garden Foodstuff/<u>Shantou</u> Red Garden Food

Processing Co. (collectively, 'Red Garden')."  (Emphasis added) (72 Fed. Reg 52049)

(September 12, 2007).

　　　Shantou RGFP's October 18, 2019 letter contains numerous citations to both Red

Garden's reference to its legal name, as well as Commerce's references to it in all subsequent

administrative reviews prior to the Section 129 revocation in 2013 – all of which <u>correctly</u>

spelled Shantou RGFP's name.

　　　Thus, while the Federal Register notices in the investigation did not state Shantou

17

RGFP's name (since it was not the exporter, only a related company to be collapsed with the exporter, Shantou RGFS), the first administrative review clearly states that the two companies were subject to the dumping order and further thereby confirms that Shantou Red Garden Food Processing Co., Ltd. was the company subject to the collapsing memorandum issued by Commerce in the investigation.   Further, that final results notice for the first administrative review does not cite any third company, i.e., does not cite "Red Garden Food Processing Co., Ltd." (without "Shantou" preceding it).   Why?  Because it nevere existed, which was clear to Commerce during both the investigation, first administrative review, and later administrative reviews prior to revocation in 2013.

The IDM accompanying the final determination in the LTFV investigation found Shantou RGFS and Shantou RGFP to be affiliated under its regulations.  *See* Comment 6 of the IDM. ("As demonstrated above and based on the Department's <u>verification findings</u> and the information contained within Red Garden's <u>questionnaire response</u>, the Department believes that Red Garden is affiliated with RGFP, meeting the requirement of 351.401(f)(1)." (*Id*. at 29) (emphasis added).   Only Shantou Red Garden Food Processing Co., Ltd., submitted responses and was verified.  The fictitious Red Garden Food Processing Co., Ltd. (without "Shantou" preceding its name) neither entered an appearance, submitted responses, nor was verified by the Department.

Commerce further addressed RGFP in Comment 6.C., at 27-30.  There, Commerce found RGFP, Shantou Red Garden Food Processing Co., Ltd., also to be affiliated with Shantou Red Garden Foodstuff in compliance with section 771(33)(E) of the Tariff Act of 1930, as amended.

18

"Therefore, based upon these relationships between Red Garden and RGFP, the Department

finds that they are affiliated under sections 771(33)(E) and (F) of the Act." *Id*. at 28.

That memorandum also cites (at Comment 6) Commerce's decision to collapse RGFP

with RGFS.  ("As demonstrated above and based on the Department's <u>verification findings</u> and

the information contained within Red Garden's <u>questionnaire response</u>, the Department believes

that Red Garden is affiliated with RGFP, meeting the requirement of 351.401(f)(1)." (*Id*. at 29)

(emphasis added).   Again, Shantou Red Garden Food Processing Co., Ltd., submitted responses

and was verified.  The fictitious Red Garden Food Processing Co., Ltd. (without "Shantou"

preceding its name) neither entered an appearance, submitted responses, nor was verified by the

Department.

Commerce succinctly summarized its ruling.  "For the final determination, the

Department notes that implicit in the Department's decision to collapse Red Garden and RGFP is

that the <u>resulting rate would apply to the entire collapsed entity</u>, because to do otherwise would

defeat the purpose of collapsing them in the first place.  The Department also notes that the

rationale for collapsing applies to both producers and exporters if the facts indicate that

producers of like merchandise are affiliated as a result of their mutual relationship with an

exporter." *Id.* (emphasis added).

Accordingly, the Department found that both companies deserved the identical rate.  "In

this case, Red Garden and RGFP <u>are entitled to the same separate rate</u> based on the data in their

questionnaire responses as verified by the Department in this proceeding.  Therefore, based on

the foregoing analysis, the Department has determined to apply the Red Garden rate to both Red

Garden and RGFP."  *Id.* at 30.  (Emphasis added).

19

The Department finally concluded as follows.  "The granting of a separate rate to the entire entity is warranted in this case.  Accordingly, the Department has collapsed Red Garden and RGFP, and the Department has assigned the same antidumping rate to both entities for the final determination."  *Id.* (Emphasis added).

It is extremely important to note that Commerce referenced both companies as "the entire collapsed entity."  Singular.  The two companies, as of the final determination of the LTFV were treated as one company, with one rate.  It is also important to note that Shantou RGFP was a subsidiary of Shantou RGFS.  This is because the RGFS, its general manager (who also was the general manager of Shantou RGFP), and others founded Shantou RGFS.  Later, the general manager, his wife, and Shantou RGFS purchased the remaining shares of Shantou RGFP.  Shantou RGFP was founded to process shrimp for sale by Shantou RGFS, which is only a sales company.

Since Shantou RGFP, in both the LTFV investigation and in AR 2018-19, was a subsidiary of Shantou RGFS, no matter which company was the exporter, they were "treated as a single entity."  Since there is no question that Shantou RGFS was excluded from the dumping order, that coupled with the two companies being treated as a single entity, leads to the only reasonable conclusion that Shantou RGFP independently benefits from Shantou RGFS' exclusion, regardless whether it was correctly named in the revocation Federal Register notice.

Commerce has not explained how a rate applied to a parent company cannot be applied to its subsidiary in this situation.  Nor has Commerce explained how a rate for a subsidiary can be different from that of its parent.

20

As a result of the lawsuit decided in 2012, brought by both Red Garden companies, and the Timken Notice issued by Commerce thereafter, both companies – Commerce using their correct legal names – saw their dumping margin reduced.  Later, in 2013, as a result of the World Trade Organization ("WTO") Appellate Body issuing a decision regarding zeroing, Commerce recalculated the dumping margin for this single entity, resulting in a zero percent dumping margin and Commerce announcing that it was revoking the order against them.

Noteworthy, all Federal Register notices issued by Commerce between 2004-2012, which referenced Shantou RGFP did so correctly, using the full legal name.  This belies Commerce's alleged belief that in the LTFV investigation it was investigating some company other than Shantou RGFP.

Commerce published its decision to revoke the order against Shantou RGFS and Shantou RGFP in 2013.  *See Certain Frozen Warmwater Shrimp From the People's Republic of China and Diamond Sawblades and Parts Thereof From the People's Republic of China: Notice of Implementation of Determinations Under Section 129 of the Uruguay Round Agreements Act and Partial Revocation of the Antidumping Duty Orders*, 78 Fed. Reg. 18958 (March 28, 2013) ("129 revocation").

That notice revoked the dumping order against one company relevant to this discussion: Shantou Red Garden Foodstuff Co., Ltd. (*Id*. at 18959).  However, due clearly to an error, Commerce did not use the legal name of Shantou RGFP.  Rather, it used one of the shortened derivates from the LTFV investigation: Red Garden Food Processing Co., Ltd.   Since Shantou RGFS was the only Red Garden company (as exporter) to be named in the final determination and dumping order, it also was named (correctly) in this revocation notice.

21

This was the <u>first time</u> in an official Federal Register notice that Commerce erred in referring to Shantou RGFP – eight years after the Order was issued.

We note that 19 CFR § 351.224(c) allows parties five days to comment on "significant ministerial" errors made in calculations, after disclosure documents are released to a party.  Here, Commerce did not disclose any calculations in the Section 129 revocation what contained any significant ministerial errors.  Thus, this regulation was not operative.  There is no Commerce regulation which would allow for reconsideration of the issue at bar.  As noted, infra, the courts have uniformly held that agencies must reconsider their decisions in such circumstances.

There is no record evidence to even remotely suggest that Commerce intended to substitute a fictitious company (Red Garden Food Processing Co., Ltd.) for Shantou RGFP.

Between the date of the Order and the beginning of AR 2018-19, neither Red Garden company, under any name, exported subject merchandise to the U.S.  Only in 2019, when Commerce questioned Shantou RGFP's exports did Shantou RFGP realize that the Section 129 revocation had erroneously spelled its name.  Despite numerous pleadings to Commerce to rectify an obvious typographical error, the Department refused to do so.

For example, Shantou RGFP submitted a request to Commerce on May 13, 2020, to rectify this error.  The letter was correctly filed under the Section 129 Proceeding, rather than in the AR 2018-19 proceeding and, therefore, is not on this administrative record.  On May 22, 2020, Commerce rejected that request.

We respectfully ask the Court to allow all documents from the Section 129 proceeding to be entered into the record herein.

22

Shantou RGFP during the entire AR 2018-19 was operating, i.e., conducting business, in substantially the same manner as it was during the original period of investigation ("POI") and LTFV investigation, 2003-2005:.  (1) same business license, (2) same business address, (3) same general manager, holding more than five percent of ownership in both the POI and in AR 2018-2019, (4) same subject merchandise sold to the U.S., (5) same production equipment, and (6) same U.S. customer.

> **b.   Commerce has the authority to modify the Section 129 revocation and should have done so.**

The Section 129 determination was flawed for two reasons: (1) it misspelled Shantou RGFP's name, and (2) as a result, it was not predicated on substantial evidence on the record, since it applied the revocation of the Order to a fictitious company.

The appeals courts have held that the power to reconsider something that is authorized by the statute is inherent in the power to decide.  They have uniformly decided this way, regardless whether the administrative agency has the explicit statutory authority to do so.  Thus, there is no statutory prohibition preventing Commerce from correcting its error in the Section 129 revocation in 2013.  In fact, numerous court decisions encourage such reconsideration.

> In fact, courts have explicitly found the ITC to have the authority to reconsider its final determinations. *See  Borlem S.A. -- Empreedimentos Industriais v. United States, 913 F.2d 933, 938-39 (Fed. Cir. 1990)* (finding Court of International Trade has the authority to order ITC, on remand, to reconsider a prior determination where such decision was based on erroneous data); *see also  Alberta Gas Chems., Ltd. v. Celanese Corp., 650 F.2d 9, 12-14 (2d Cir. 1981)* ("This universally accepted rule [that Federal Courts possess the authority to reconsider their final decisions] has been applied to proceedings before federal administrative agencies. . . . We find no reason, therefore, not to give the [ITC] the opportunity to resolve in the first instance the major issues in this litigation." (citation omitted)). A finding that the ITC has the authority to reconsider a final determination is particularly appropriate where after-

23

> discovered fraud is alleged.1 *See  Alberta Gas Chems., Ltd.* ("It is hard to
> imagine a clearer case for [the ITC] exercising this inherent power than
> when a fraud has been perpetrated on the tribunal in its initial
> proceeding.").

*Elkem Metals Co. v. United States*,193 F. Supp. 2d 1314, at 1321, (U.S. Ct. Intl. Trade, February

21, 2002).  (Emphasis added).  Thus, a decision based on any "erroneous data" is grounds for an

agency to correct a decision, in order to protect the integrity of the agency's proceedings.

As noted in the previous footnote, the U.S. Supreme Court has stated that, in equity, there

is <u>no deadline</u> to correct certain administrative decisions, just one of those instances being

decisions based on fraud.

Here, the issue before the Court relates to only one company, Shantou RGFP.  Whether

this issue was fixed five days after the Section 129 revocation was issued, or years later, in equity

(if not in law), it should be corrected.  The integrity of the proceedings, the public interest,

substantial evidence on the record, reasonableness required of Commerce, simple fairness, etc.,

all require correction of the Section 129 revocation.

Under the standard of review established in *Skidmore,* "{t}he weight {accorded to an

administrative} judgment in a particular case will depend upon the thoroughness evident in its

consideration, the validity of its reasoning, its consistency with earlier and later pronouncements,

and all those factors which give it power to persuade, if lacking power to control." *Skidmore v.

Swift & Co.,* 323 U.S. 134, at 140.

Indeed, since every Federal Register notice prior to the Section 129 revocation uniformly

cited the correct name for Shantou RGFP, there was not even a scintilla of evidence, much less

---

1 The court in *Alberta Gas Chems., Ltd.* relied on **<u>Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244, 88 L. Ed.
1250, 64 S. Ct. 997 (1944)</u>**, where the Supreme Court stated, in discussing the inherent power of federal courts to reconsider their

24

substantial evidence on the record to support the Section 129 revocation of a fictitious company. *See Universal Camera* at 477.

In essence, Commerce has committed fraud against Shantou RGFP.  Fraud can go both ways.  The perpetuation of this fraud in the Section 129 revocation, only magnifies the lack of integrity by Commerce in this entire proceeding.

Commerce, by not admitting and correcting its error, failed to conduct its Section 129 revocation in a fair and balanced manner, causing it to be arbitrary and capricious.  *See Atlantic Sugar.*

Moreover, this problem caused the dumping margins for Shantou RGFP to not be calculated as accurately as possible.  *See Shakeproof Assembly.*

Indeed, the U.S. Supreme Court also has affirmed that the government may not continue a mistake once notified, calling it "the highest form of injustice."  *See Shein.*

Yet another Supreme Court decision held that there is implied authority for agencies to accept petitions for reconsideration even though no statutory authority exists.  *See Civil Aeronautics Board.*

Indeed, the U.S. Court of Appeals for the Federal Circuit ("CAFC") agrees that the integrity of the Department's proceedings must be protected to ensure accuracy.

> Thus, Commerce's focus was not on "changed circumstances" in the sense of *§ 1675(b)(1)*. Instead, Commerce's reconsideration was just that--a reopening and reconsideration of its previously-conducted yearly administrative reviews based on newly revealed information of TKS's

---

final judgments, "there has existed . . . **, a rule of equity to the effect that under certain circumstances, one of which is after-discovered fraud, relief will be granted against judgments regardless of the term of their entry."** (Emphasis added).

25

fraudulent conduct, which raised questions about the integrity of the original proceedings.

> This Commerce had a right to do--apart from the statutory authority of *§ 1675(b)(1)*. The prohibition against doing something *not* authorized by statute is altogether different from the power to reconsider something  that *is* authorized by statute. The power to reconsider is inherent in the power to decide. *See Trujillo v. Gen. Elec. Co., 621 F.2d 1084, 1086 (10th Cir. 1980)* ("[T]he power to decide in the first instance carries with it the power to reconsider."). For this reason, the courts have uniformly concluded that administrative agencies possess inherent authority to reconsider their decisions, subject to certain limitations, regardless of whether they possess explicit statutory authority to do so. *Macktal, 286 F.3d at 825-26* ("[I]t is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decisions.") (collecting cases); *Alberta Gas Chems., Ltd. v. Celanese Corp., 650 F.2d 9, 12 (2d Cir. 1981)* (discussing "the inherent power of any administrative agency to protect the integrity of its own proceedings"); *Bookman v. United States, 453 F.2d 1263, 1265, 197 Ct. Cl. 108 (Ct. Cl. 1972)* ("[I]t is the general rule that '[e]very tribunal, judicial or administrative, has some power to correct its own errors or otherwise appropriately to modify  its judgment, decree, or order.'" (citation omitted)).

*Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360-61, (CAFC 2008) (emphasis in original and supplied).  So, too, Commerce should "correct its own errors" to protect the integrity of its proceedings and ensure that its decisions are predicated on substantial evidence on the record.

> Finally, an agency may not reconsider in a manner that would be arbitrary, capricious, or an abuse of discretion. *5 U.S.C. § 706(2)(A)*; *Macktal, 286 F.3d at 826*.

*Id.* Thus, if an agency does not correct its errors, or fraud, it not only destroys the integrity of its proceedings, but it thereby acts in a manner that is arbitrary, capricious, and an abuse of discretion.

Most importantly, these corrections do not have to be performed under judicial

26

scrutiny.  Agencies have the power to reconsider and correct their decisions.  Thus, there is no statute of limitations to preserve the integrity of Commerce's decisions, as confirmed by the Supreme Court in *Hazel-Atlas Glass, supra*.

Thus, Commerce should correct the name of RGFP in the section 129 decision, to reflect Shantou Red Garden Food Processing, Co., Ltd., as the company that was collapsed with Shantou RGFS in the investigation and dumping order and, therefore, also excluded from the dumping order.  Further, Commerce therefore should rescind this administrative review, without penalty to RGFP's entries of subject merchandise, since the initiation was void *ab initio*, given substantial evidence on the record, the law, and equity.

Once that is accomplished, the remaining issues are moot, since RGFP would not be subject to the 2018-19 administrative review.

**B.   COMMERCE DOES NOT HAVE THE AUTHORITY TO CONDUCT A SUCCESSOR-IN-INTEREST INQUIRY AS PART OF THE ADMINISTRATIVE REVIEW.  ALTERNATIVELY, SINCE COMMERCE DID NOT COMPLY WITH ITS OWN REGULATIONS, ITS SII DECISION IS NOT IN ACCORDANCE WITH LAW.**

If the Court finds that the administrative review was void *ab initio*, all remaining issues are moot since they are the "fruit of the poisonous tree."

1.   **Commerce did not have authority to conduct its SII Inquiry**.

Plaintiffs argue that Commerce did not conduct a valid SII inquiry as part of its administrative review.

Commerce, in its final IDM, asserts that it conducted a valid SII analysis.  It cites *East Sea Seafoods LLC v. United States*, 703 F. Supp.2d 1336, 1350-53 (CIT 2010) in support of that position.  The problem, however, is that *East Sea Seafoods* did not address the issue whether

27

Commerce had the authority to conduct an SII inquiry.  Thus, it is not on point.  Rather, *East Sea Seafoods* merely addressed the  facts regarding SII issues in the underlying administrative review.

The IDM also asserts, at 18, that ASPA (the domestic industry) met the terms of 19 CFR § 351.216, which encompasses changed circumstances review ("CCR"), by requesting that Commerce conduct an SII inquiry in its letter of October 24, 2019, at 8.  P.R. 68.  A close review of this letter finds no request for either a changed circumstances review or SII analysis.

Strangely, while Commerce asserts that it did not conduct a CCR, it nevertheless, states that it conducted the SSI analysis under the terms of the CCR regulation, 19 CFR § 351.216.  A CCR (or anything purport to utilize the CCR regulation) can be started by one mechanism: an interested party requesting it.  *See* 19 CFR § 351.216(b).  There is not even a scintilla of evidence that any interested party requested any review under this regulation.

Moreover, the IDM states that Commerce can self-initiate a changed circumstances inquiry "whenever Commerce receives information concerning changed circumstances sufficient to warrant a review of an order, Commerce shall conduct a review of the determination based on those changed circumstances.  Thus, a request for CCR is unnecessary in order for Commerce to conduct such an analysis." *Id.*  This is incorrect, as stated above.  An interested party must request the CCR for an inquiry as provided for in § 351.216(b). of the CCR regulation.

Commerce cites no legal authority to conduct either an SII inquiry or CCR *sua sponte*.

Thus, conduct of the SII inquiry under the terms of this regulation was not in accordance with law. Thus, any analysis in this regard should be expunged from the administrative record.

        **C.    ALTERNATIVELY, IF THE COURT UPHOLDS THE LEGALITY OF COMMERCE'S ABILITY TO CONDUCT AN SII ANALYSIS, ITS ANALYSIS WAS NOT BASED ON SUBSTANTIAL EVIDENCE ON THE RECORD.**

28

> **1. Commerce's entire analysis is predicated on it comparing Shantou RGFP to a fictitious company in the Section 129 revocation, Red Garden Food Processing Co., Ltd. (without "Shantou" preceding it).**

Commerce made this error in the preliminary DM and in the final IDM.

> Based on the record evidence, Commerce preliminarily finds that Shantou RGFP, as it currently exists, is not the successor-in-interest to the "Red Garden Food Processing Co., Ltd." the company revoked from the Order in 2013.

Preliminary DM at 8.  This error was compounded in the *final results,* when Commerce implicitly, and incredulously, admits/claims that it has no idea which company it investigated in the LTFV investigation.  It still believed that in the investigation it was investigating RGFP rather than Shantou RGFP.  This explanation is disingenuous in the extreme, since for the next eight years, every Federal Register notice correctly referred to Shantou RGFP.

> As we explained above, at the heart of Commerce's SII analysis in the instant review was the question of whether Shantou RGFP as it currently exists is the successor to the company that **existed during the LTFV investigation (*i.e.,* "Red Garden Food Processing Co., Ltd**." or, as Shantou Red Garden Foods asserts, Shantou RGFP); *see* Comment 1).

Final IDM at 24. (Emphasis added).   In the LTFV investigation, Commerce issued all questionnaires to "Shantou RGFP," as demonstrated in the questionnaires themselves.  Shantou RGFP's business license, submitted to Commerce in the LTFV investigation stated "Shantou Red Garden Food Processing Co., Ltd."  It was verified.  Commerce went to Shantou RGFP's office in China as part of its verification.  There was no legal document on the record of the LTFV investigation to support to support Commerce's conclusion of the existences of the fictitious company, RGFP.  RGFP never entered an appearance in the LTFV investigation, nor

submitted any documentation, nor was represented by counsel, nor was verified.  These issues

only came to light in the preliminary and final results of AR 2018-19.  Thus, there is not even a

scintilla of evidence to support a reasonable conclusion that the fictitious RGFP existed.

Moreover, Commerce is only now admitting (15 years after issuing the Order) that it issued a

dumping order and revoked that order against a fictitious company.  Yet, rather than conducting

administrative reviews of that fictitious company, Commerce somehow got it right and

conducted eight years of administrative reviews against the correct Shantou RGFP prior to the

Section 129 revocation.

Such actions by Commerce are beyond belief.  As Shantou RGFP explained in Issue 1,

above, the integrity of the government's actions is at stake.  Also is the rule of law: Commerce

must be held accountable for not following the law, the facts, and issuing decisions not based on

substantial evidence and that are otherwise not in accordance with law.

Nothing Commerce has done either in 2004/5, 2013, or in AR 2018-19, has been correct.

 Thus, all these actions have been not based on substantial evidence, have been arbitrary and

capricious, and an abuse of discretion.  Thus, they have not been in accordance with law.

Even more egregious, it appears that Commerce intentionally hid its true intentions until

2020, when it issued the *preliminary results* in the underlying administrative review.

As explained, above, in the first issue, all parties referred to the two Red Garden

companies under different derivatives, for the sake of convenience, e.g., Red Garden, RGFP,

RGFS, etc.  These were meant to merely be shorthand, for sake of ease and brevity.

Accordingly, even if Commerce were legally allowed to conduct the SII inquiry, the

results of that inquiry should be thrown out due to the flagrant disregard for the law by

30

Commerce.

> ## 2. Alternatively, if the court allows the SII analysis, Shantou Red Garden met its burden to prove it operates substantially the same as it did in the POI of the LTFV investigation.

Commerce has several indicia to determine if a later company is the successor-

in-interest to a former company.

> As Commerce explained in the SII Memo, in evaluating successorship issues, we generally consider a company to be the successor to another company for AD cash deposit purposes if the operations of the successor are not materially dissimilar from those of itspredecessor. In making this determination for purposes of applying the AD law, Commerce examines a number of factors including, but not limited to, changes in: (1) management; (2) production facilities; (3) supplier relationships; and (4) customer base.[102] Although no single factor, or even several of these factors, will necessarily provide a dispositive indication of succession. generally if the "totality of the circumstances" demonstrates that, with respect to the production and sale of the subject merchandise, the new company operates as the same business entity as the prior company, Commerce will assign the new company the cash deposit rate of its predecessor.

Final IDM at 21. (Emphasis added). Noteworthy, the operative word is "operations," not

ownership.  Regardless who owned Shantou RGFP, its operations were identical pre- and post-

Order.

Assuming, *arguendo*, that the RGFP Commerce refers to in the LTFV investigation is

actually Shantou RGFP and, as well, Commerce is referring to the facts presented by Shantou

RGFP in the LTFV investigation, Shantou RGFP in AR 2018-19 presented substantial evidence

on the record to substantiate that it continues to operate in the AR substantially the same as it did

in the LTFV investigation.

First, regarding management, the IDM found there to be a "significant" change in

31

ownership, control and management between RGFP in the investigation and Shantou RGFP in

AR 2018-19, even though it was supposed to limit its analysis only to "management."  However,

in its analysis, Commerce did not discuss management at all.  Rather, it focused on how RGFP

had been a Sino-foreign joint venture in the investigation and  was controlled by a board of

directors, whereas in the AR it was owned by Chinese entities/individuals.  Commerce failed to

consider any opposing evidence, such as (1) the general manager was the same in both

companies, (2) the general manager, in both time periods, owned more than five percent of

Shantou RGFP, and (3) there was no need for a board of directors, since the general manager, his

wife, and Shantou RGFS (which the general manager owned), had no need for a board.

With regard solely to the management issue, Commerce made no finding that the actual

management had changed or that Shantou RGFP operated any differently in sales of subject

merchandise to the U.S. in the two time periods.

Second, regarding production facilities, Commerce admitted that the production facilities

and address remained the same.  That should have ended the discussion.  Since, Commerce could

not kill Shantou RGFP on that count, it created a new count: products. Why?  Because it knew

that the production facilities were identical.   Here, Commerce stated that it found a "material

difference" in the two time periods. (*Id.*).  Commerce stated that Shantou Jin Cheng Foods Co.,

Ltd. ("Shantou JCF"), (a name Shantou RGFP converted to between 2007-2013, before

reclaiming its original name, Shantou RGFP), sold only non-subject merchandise to the U.S.,

whereas RGFP had not in the POI.  The record does not show what Shantou RGFP/Shantou

RGFS sold in the POI of the LTFV investigation other than subject merchandise to the U.S.

Commerce only asked these companies to report subject merchandise sold to the U.S.  Thus,

32

Commerce, not only has created a new category, but misrepresented what the Red Garden companies did in the POI.

Third, supplier relationships, Commerce admitted there was limited information on the record of the AR regarding the names of suppliers in the LTFV investigation. Commerce correctly acknowledged that Shantou RGFP stated that as a matter of routine business relationships, it had added and subtracted suppliers many times, but no longer had any documentation regarding the POI, 18 years earlier, since it was not required to maintain business documents for such a long time. Thus, Shantou RGFP could not ascertain with certainty which of its current suppliers also supplied it in 2003, if any. From this answer, Commerce merely speculated to determine that Shantou RGFP has changed suppliers too significantly to be the same company it was in the POI. The courts have held that speculation cannot substitute for substantial evidence on the record. *See Lucent Techs.* and *Novosteel SA.*

Regarding the fourth factor, customer base, Commerce found that there was only one customer RGFP and Shantou RGFP shared in the two time periods. The only problem with this analysis is that in each time period, Shantou sold subject merchandise to only one company, an affiliate/subsidiary of Red Chamber Co. Thus, Commerce yet again tries to twist the facts to make it seems that Shantou RGFP in the AR was no longer operating in the same general way. Yet, substantial evidence on the record shows that all sales of subject merchandise by Shantou RGFP in each time period ultimately went to one company, Red Chamber Co..

Commerce also cites that Shantou JCF, sold shrimp around the world in 2007-2013 and this somehow is different from Shantou RGFP in the POI. The record of the LTFV investigation does not show to which countries Shantou RGFS and Shantou RGFP sold. Why? Commerce

33

never asked that question because it is not important to how these companies do business solely

regarding subject merchandise sold to the U.S.  Even between 2005-2007, Shantou RGFP did not

sell subject merchandise to the U.S.  Just because a company stops selling to the U.S., does not

make it a different company.  Yet, Commerce implies this without citing any legal authority.

Thus, for the four basic criteria used by Commerce, Shantou met all requirements.

Nevertheless, Commerce then added additional factors.

First, Commerce stated that Shantou RGFP's rationale for changing its name, was not

supported by the record.  This is not true.  See Shantou RGFP's letter of October 18, 2019, for

details.  Shantou RGFP submitted to Commerce every record it had of the change in name.

Moreover, Shantou RGFP submitttedthe business licenses for its original name, for conversion to

Shantou JCF, and conversion back to its original name, Shantou RGFP.  In all cases, the business

license number was the same; the address was the same; the general manager was the same, and

the manner of doing business was the same.  The government of China recognized that these

were the same company and not successors to their predecessors.  There is not even a scintilla of

evidence on the record to support Commerce's speculation.  Again, speculation cannot substitute

for substantial evidence.  *See Lucent Techs*. and *Novosteel SA*.

Second, Commerce argued that Shantou RGFP misrepresented a certain fact.  Shantou

RGFP stated that it converted back to its original Shantou RGFP name in 2013, after a different

entity purchased the master lease for the property where Shantou RGFP and Shantou RGFS are

located (they share office space).  Commerce stated that the master lease changed hands in 2007

and therefore, the name change in 2013 did not comport with the 2007 date.  Last time we

checked, 2013 is after 2007.  Thus, there was no discrepancy and this is a non-issue.  This again

illustrates how Commerce made a conscious effort to destroy Shantou RGFP's presence in the U.S. market, and only "came clean" 15 years after it issued the Order.

Commerce's conclusion is nothing short of absurd.

Rather, record evidence indicated that the name changes occurred not to claim another company's deposit rate. As stated previously, neither Shantou RGFP, nor Shantou JCF exported subject merchandise to the U.S up to the date of the Section 129 revocation. Thus, Shantou JCF did not attempt to use another company's rate. Nor did Shantou RGFP; it simply wanted its old name back, since the reason for its name change in 2007 – due to the unrelated master leaseholder also having "Red Garden" in its name, going bankrupt and having creditors not only hound it but harass both Red Garden companies, thinking any company with the "Red Garden" name owed them money, no longer was a factor.

Even when the master leaseholder's problem dissipated, creditors still harassed Shantou RGFP. That is why it kept the name Shantou JCF so long. It did not want to be sued by irate creditors of the master leaseholder who may not have been fully compensated for their losses. Even after the 2013 revocation, Shantou RGFP still did not sell subject merchandise to the U.S. until 2018. Thus, contrary to Commerce's assertion, it was not after something it did not deserve. If Commerce is correct, why did Shantou RGFP wait five years to export subject merchandise to the U.S.?

Commerce further argues (IDM at 23), without evidence, that Shantou JCF converted back to its original name, Shantou RGFP, because Shantou RGFP had its own dumping rate. Commerce admits this is a "conclusion," but its "evidence" is simply a retelling of what occurred between 2003 and 2013. It provides not even a "smoking gun" to support Commerce's

35

speculation since it is not predicated on substantial evidence on the record.

Finally, the IDM at 24 disagrees with its own statement at 21.  At 21, Commerce admits there was no change to the production facilities.  Yet, at 24, Commerce states the opposite.  "As we noted above, between 2007 and 2013, there was a complete change in the product line, switching from subject merchandise to non-subject merchandise, which would indicate the that the operations are materially dissimilar, even if those products were produced at the same location." (*Id.*)  This statement presumes that subject and non-subject merchandise are manufactured on different production equipment.  It also presumes that the record from the POI contains sales to the U.S. or elsewhere, of non-subject merchandise.  It does not, as explained above.  Neither in the POI nor AR 2018-19, did Commerce ask Red Garden to report sales of non-subject merchandise to either the U.S. or elsewhere.  Thus, there is no basis for this conclusion and Commerce merely misstates the facts.  Curiously, Commerce stated that Shantou RGFP did not refute Commerce's conclusions.  The final IDM is the first time Shantou RGFP was aware that it needed to refute Commerce's conclusions.  Commerce does not cite to any questionnaire wherein it notified Shantou RGFP of these conclusions and ask it to refute them.

In sum, Shantou RGFP in the AR operated substantially the same as it did in the POI.  Thus, the totality of the evidence, *i.e.,* substantial evidence on the record supports Shantou RGFP's position.

### D.  COMMERCE'S ATTEMPT TO DEACTIVATE THE COMBINATION RATES CITED IN THE SECTION 129 REVOCATION IS WITHOUT MERIT.

#### 1.  The Facts.

Commerce cited no statutory or regulatory authority requiring, or even allowing, it to

36

eliminate combination rates cited in the exclusion order from the instant proceeding.  While

Shantou RGFP could not find any activity by these supplier companies (which had supplied it

during the POI) during this administrative review, this does not preclude these companies, if

indeed inactive, from renewing business operations and operating in conjunction with the Red

Garden companies in the future.  Commerce cited not a scintilla of evidence, much less

substantial evidence on the record, granting it authority to make this modification.

More importantly, Commerce's LTFV final determination, amended final determination

and antidumping duty order, overtly did not include combination rates.  In Commerce's IDM for

the LTFV investigation (Comment 3, pp.18-19), it considered combination rates, but chose not to

use them.  That is clearly evidenced by the final determination, amended final determination, and

antidumping duty order not containing any recitation to combination rates, much less to which

supplier companies those alleged combinations applied.  Thus, Commerce in the Section 129

revocation had no authority to impose them for the first time – eight years after imposition of the

Order. And, hence, Commerce has no authority to deactivate them in AR 2018-19.

As part of this issue, Commerce stated that it also would deactivate the case numbers

given to Customs and Border Protection ("CBP") for both Red Garden companies.  Final IDM at

26.  This should not be done, for the foregoing reasons.

Thus, Commerce's decision regarding this issue was not based on substantial evidence on

the record, was arbitrary and capricious, and not otherwise in accordance with law.

E.  **COMMERCE ERRONEOUSLY ADDED THE VALUES IN
‘TRUCKRVNU’ TO U.S. PRICE, WHEN THEY SHOULD HAVE BEEN
DEDUCTED.**

1.    **Facts**.

37

Commerce completely misunderstood the explanation for this field. In essence, the ocean carrier would give RGFP a "through rate" from its warehouse to the customer's warehouse in the U.S. RGFP paid for that full service and Commerce deducted it from gross unit price. For certain U.S. sales, however, the ocean carrier was unable to deliver to the U.S. customer's warehouse. Rather, it could only deliver to the U.S. port. Because of that, it gave a refund to RGFP for that lack of service between the U.S. port and customer's warehouse. This constitutes income/revenue to RGFP which Commerce should have added to the gross unit price. Instead, Commerce deducted it from the gross unit price. This artificially increased the dumping margin, thereby not resulting in calculation of a dumping margin as accurately as possible.

> ### 2.    Argument.

Substantial evidence on the record confirms that the data in TRUCKRVNU was income to Shantou RGFP. That is why it is in a field containing "RVNU" (revenue). Commerce is required to use substantial evidence on the record. *See Atlantic Sugar.* Moreover, Commerce must calculate dumping margins as accurately as possible. *See Shakeproof Assembly*.

In denying Shantou RGFP's request, Commerce stated that the record evidence demonstrated that these amounts "indicated they related to a reduction to gross unit price for 'truck fee.'" Final IDM at 29. Shantou RGFP got a refund from the shipping company for these services it failed to provide, i.e., truck transport from the U.S. port to the U.S. warehouse. This is income to Shantou RGFP. A reduction in an expense equates to increase in net income.

Commerce relies on invoice in the Section A response, that notes "DEDUCT TRUCK FEE." This does not provide substantial evidence supporting Commerce's speculation that income to Shantou RGFP is really an additional expense. Since Shantou RGFP had already

38

reported all through-freight expenses (including the truck fee in question), by subtracting this truck fee amount from gross unit price, Commerce is actually double-counting it, since it was already accounted for in the ocean freight expenses; thereby artificially reducing the sales price and artificially increasing the dumping margin.

## VI.        CONCLUSION

For the reasons stated above, the court should rule in accordance with the arguments contained herein.  Thus, Plaintiffs respectfully request this Court to remand this case to Commerce with the appropriate instructions.

Respectfully submitted,

deKIEFFER & HORGAN


/s/ John J. Kenkel_____
John J. Kenkel
Alexandra H. Salzman
J. Kevin Horgan
1090 Vermont Ave., N.W.
Suite 410
Washington, D.C. 20005
(202) 783-6900
*Counsel for Plaintiffs*

April 26, 2021

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| SHANTOU RED GARDEN FOOD PROCESSING CO., LTD., SHANTOU RED GARDEN FOODSTUFF CO., LTD., and OCEAN BISTRO CORPORATION )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant. )<br><br>AD HOC SHRIMP TRADE ACTION COMMITTEE, )<br><br>Defendant-Intervenor. ) | Court No. 20-03947 |

### CERTIFICATE OF COMPLIANCE

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 10,602 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Respectfully submitted,


/s/ *John J. Kenkel*
John J. Kenkel
Alexandra H. Salzman
J. Kevin Horgan
**deKieffer & Horgan, PLLC**
Suite 410
1090 Vermont Ave., N.W.
Tel:   (202) 783-6900
Fax:   (202) 783-6909
Email: jkenkel@dhlaw.com
Counsel for Plaintiff *Shantou Red Garden Food
Processing Co., Ltd.*




Dated: April 26, 2021