**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

|  |  |  |
|---|---|---|
| SHANTOU RED GARDEN FOOD PROCESSING CO., LTD., SHANTOU RED GARDEN FOODSTUFF CO., LTD., and OCEAN BISTRO CORPORATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 20-03947 PUBLIC VERSION |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. McCARTHY
Assistant Director

OF COUNSEL
JESUS N. SAENZ
Attorney
U.S. Department of Commerce

KARA M. WESTERCAMP
Trial Counsel
U.S. Department of Justice
Commercial Litigation Branch

Office of the Chief Counsel for Trade
   Enforcement and Compliance
Washington, D.C.

P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel:  (202) 305-7571
Fax: (202) 514-8264
Email: kara.m.westercamp@usdoj.gov

July 27, 2021

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................................ iii

STATEMENT PURSUANT TO RULE 56.2 ................................................................2

    I.    The Administrative Determination Under Review  ...............................................2

    II.    Issues Presented For Review  .............................................................................2

STATEMENT OF FACTS  ..........................................................................................4

    I.    Initiation Of Review  ..........................................................................................4

    II.    Successor-In-Interest Analysis .............................................................................6

    III.    Preliminary Results .........................................................................................10

    IV.    Final Results ....................................................................................................11

SUMMARY OF ARGUMENT  ..................................................................................11

ARGUMENT 12

    I.    Standard Of Review.........................................................................................12

    II.    Commerce's Successor-In-Interest Determination Of Shantou RGFP Is Supported By Substantial Evidence And In Accordance With Law ......................................13

        A.    Commerce Lawfully Reviewed Shantou RGFP And Conducted A Successor-in-Interest Analysis ................................................................13

        B.    Substantial Evidence Supports Commerce's Determination That Shantou RGFP Is Not The Successor-In-Interest Of Red Garden .........................17

            1.    Substantial Evidence Does Not Support Plaintiffs' Claims That Shantou RGFP Was Collapsed With Shantou Foodstuff, And Excluded From The Order In The 2013 Section 129 Proceeding ........................................................................................18

            2.    Commerce's Determination That Shantou RGFP Is Not The Successor-In-Interest Of Red Garden Is Supported By Substantial Evidence ......................................................................21

i

III.    Plaintiffs' Ministerial Error Challenge To The Section 129 Determination Is Time-Barred .................................................................................................28

IV.    Commerce Properly Deactivated The Combination Rate Excluded In The 2013 Section 129 Determination ...............................................................................32

V.    Commerce's Deduction Of Truck Revenue From Gross Unit Price Is Supported By Substantial Evidence And In Accordance With Law .....................................34

CONCLUSION ...............................................................................................................35

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGES**

*Alloy Piping Products, Inc. v. Kanzen Tetsu Sdn. Bhd.*,
    334 F.3d 1284 (Fed. Cir. 2003)...........................................................30

*Altx, Inc. v. United States*,
    370 F.3d 1108 (Fed. Cir. 2004)......................................................27, 28

*Ass'n of Am. Sch. Paper Suppliers v. United States*,
    683 F. Supp. 2d 1317 (Ct. Int'l Trade 2010) ...................................20

*Atl. Sugar, Ltd. v. United States*,
    744 F.2d 1556 (Fed. Cir. 1984)........................................................12

*Camp v. Pitts*,
    411 U.S. 138 (1973)..........................................................................20

*Ceramica Regiomontana, S.A. v. United States*,
    810 F.2d 1137 (Fed. Cir. 1987)........................................................13

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938)..........................................................................12

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966)..........................................................................12

*Corus Staal BV v. United States*,
    502 F.3d 1370 (Fed. Cir. 2007)...................................................19, 31

*E. Sea Seafoods LLC v. United States*,
    703 F. Supp. 2d 1336 (Ct. Int'l Trade 2010) ...................14, 15, 18, 19

*Ford Motor Co. v. United States*,
    992 F. Supp. 2d 1346 (Ct. Int'l Trade 2014) ..............................28, 29

*Fresh Garlic Producers Ass'n v. United States*,
    83 F. Supp. 3d 1330 (Ct. Int'l Trade 2015) ....................................14

*Goldlink Indus. Co. v. United States*,
    431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ...................................13

*INS v. Elias-Zacarias*,
    502 U.S. 478 (1992)..........................................................................12

*JTEKT Corp. v. United States,*
    675 F. Supp. 2d 1206 (Ct. Int'l Trade 2009) ...................................................14

*Louis Dreyfus Citrus, Inc. v. United States,*
    495 F. Supp. 2d 1338 (Ct. Int'l Trade 2007) .................................................15

*Marsan Gida Sanayi Ve Ticaret A.S. v. United States,*
    No. 09-00483, 2011 WL 546815 (Ct. Int'l Trade Feb. 11, 2011) ....................14

*MTZ Polyfilms, Ltd. v. United States,*
    659 F. Supp. 2d 1303 (Ct. Int'l Trade 2009) ..................................21, 22, 23

*Murakami v. United States,*
    46 Fed. Cl. 731 (2000) ...................................................................................21

*Nucor Corp. v. United States,*
    612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) .................................................12

*Peer Bearing Company-Changshan v. United States,*
    884 F.Supp.2d 1313 (Ct. Int'l Trade 2012) ...................................................15

*Qingdao Sea–Line Trading Co. Ltd. v. United States,*
    766 F.3d 1378 (Fed. Cir. 2014)......................................................................19

*QVD Food Co., Ltd. v. United States,*
    658 F.3d 1318 (Fed. Cir. 2011)......................................................................20

*Shandong Huarong Gen. Corp. v. United States,*
    159 F. Supp. 2d 714 (Ct. Int'l Trade 2001) ...................................................13

*SKF USA Inc. v. United States,*
    391 F. Supp. 2d 1327 (Ct. Int'l Trade 2005) ........................................31, 32, 33

*Suntec Indus. Co. v. United States,*
    857 F.3d 1363 (Fed. Cir. 2017)......................................................................29

*Tokyo Kikai Seisakusho, Ltd. v. United States,*
    529 F.3d 1352 (Fed. Cir. 2008)......................................................................32

*Valkia Ltd. v. United States,*
    Slip Op. 04–71, 2004 WL 1375747 (Ct. Int'l Trade June 18, 2004)................15

*Wheatland Tube Co. v. United States,*
    161 F.3d 1365 (Fed. Cir. 1998)......................................................................13

*Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*,
    716 F.3d 1370 (Fed. Cir. 2013)................................................................19, 31

## **STATUTES**

19 U.S.C. § 1516a(a)(2)(B)(vii) ..................................................................28

19 U.S.C. § 1516a(b)(1)(B)(i) ....................................................................12

19 U.S.C. § 1516a(b)(2)(A) ........................................................................20

19 U.S.C. § 1673d(e) ..............................................................................29, 30

19 U.S.C. § 1675(a)(1)(B) .......................................................................13, 14

19 U.S.C. § 1675(b)(1) ................................................................................17

19 U.S.C. § 3538(c) .....................................................................................4

28 U.S.C. § 1581(i) ....................................................................................28

## **RULES**

RCFC 56.2(c)(2) ..........................................................................................21

## **REGULATIONS**

19 C.F.R.  § 351.102(b)(47) ........................................................................29

19 C.F.R. § 351.204(e)(3)(i) ....................................................................33, 34

19 C.F.R. § 351.213(b)(1)............................................................................14

19 C.F.R. § 351.216 ....................................................................................16

19 C.F.R. § 351.224(c)(2) .......................................................................10, 11

19 C.F.R. § 351.224(f) ...........................................................................29, 30

19 C.F.R. § 351.401(c)................................................................................34

## OTHER AUTHORITIES

*Brass Sheet and Strip from Canada*,
      Fed. Reg. 20,460, 20,461 (Dep't of Commerce May 13, 1992)

*Antidumping Duties; Countervailing Duties; Final Rule*,
      62 Fed. Reg. 27,296 (Dep't of Commerce May 19, 1997 ..................................33

*Fresh and Chilled Atlantic Salmon from Norway*,
      64 Fed Reg. 9,979(Dep't of Commerce Mar. 1, 1999 .......................................18

*Certain Frozen Warmwater Shrimp from the People's Republic of China,*
      70 Fed. Reg. 5,149 (Dep't of Commerce Feb. 1, 2005) ........................... passim

*Certain Frozen Warmwater Shrimp from the People's Republic of China*,
      72 Fed. Reg. 52,049 (Dep't of Commerce Sept. 12, 2007) ........................25, 27

*Tapered Roller Bearings from the People's Republic of China*,
      77 Fed. Reg. 2,271 (Dep't of Commerce Jan. 12, 2012) ...............................16, 17, 28, 31

*Small Diameter Graphite Electrodes from the People's Republic of China*,
      77 Fed. Reg. 15,042 (Dep't of Commerce Mar. 14, 2012)..............................31

*Certain Frozen Warmwater Shrimp from the People's Republic of China: Notice of Implementation of Determinations Under Section 129 of the Uruguay Round Agreements Act and Partial Revocation of the Antidumping Duty Orders*,
      78 Fed. Reg. 18,958 (Dep't of Commerce Mar. 28, 2013).....................................4, 11, 29

*Stainless Steel Bar from Spain*,
      79 Fed. Reg. 63,081 (Dep't of Commerce Oct. 22, 2014)..............................16

*Crystalline Silicon Photovoltaic Cells from the People's Republic of China*,
      83 Fed. Reg. 35,616 (Dep't of Commerce July 27, 2018).........................16, 17

*Hardwood Plywood Products from the People's Republic of China*,
      83 Fed. Reg. 504, (Dep't of Commerce Jan. 4, 2018) .......................................31

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
      84 Fed. Reg. 18,777 (Dep't of Commerce May 2, 2019) ....................................4

*Circular Welded Pipe from the United Arab Emirates*,
      84 Fed. Reg. 44,845 (Dep't of Commerce Aug. 27, 2019)..............................16

*Certain Frozen Warmwater Shrimp from the People's Republic of China*,
      85 Fed. Reg. 12,894 (Dep't of Commerce Mar. 5, 2020).......................... passim

*Certain Frozen Warmwater Shrimp from the People's Republic of China,*
    85 Fed. Reg. 83,891 (Dep't of Commerce Dec. 23, 2020) ................................................3

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| SHANTOU RED GARDEN FOOD PROCESSING CO., LTD., SHANTOU RED GARDEN FOODSTUFF CO., LTD., and OCEAN BISTRO CORPORATION, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | ) ) ) |
| Defendant-Intervenor. | ) ) |

Court No. 20-03947
PUBLIC VERSION

**DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Defendant, the United States, respectfully submits this response to the Rule 56.2 motion for judgment upon the administrative record filed by plaintiffs, Shantou Red Garden Food Processing Co., Ltd. (Shantou RGFP), Shantou Red Garden Foodstuff Co., Ltd. (Shantou Foodstuff), and Ocean Bistro Corporation (collectively, plaintiffs).  Plaintiffs challenge the final results issued by the United States Department of Commerce (Commerce) of the fourteenth administrative review of the antidumping duty order covering certain frozen warmwater shrimp from the People's Republic of China.  We demonstrate below that Commerce's determinations are supported by substantial evidence and are otherwise lawful, and therefore, should be sustained.

## STATEMENT PURSUANT TO RULE 56.2

**I.** **The Administrative Determination Under Review**

The administrative determination under review is *Certain Frozen Warmwater Shrimp from the People's Republic of China*, 85 Fed. Reg. 83,891 (Dep't of Commerce Dec. 23, 2020) (final results) (P.R. 190),[1] and accompanying Issues and Decision Memorandum (IDM) (P.R. 185). The review covered Shantou RGFP as the only mandatory respondent. The period of review is February 1, 2018, through January 31, 2019.

**II.** **Issues Presented For Review**

1. Whether Commerce's determination that Shantou RGFP is not the successor-in-interest to Red Garden Food Processing, Co., Ltd. (Red Garden) is supported by substantial evidence and in accordance with law.

2. Whether Commerce properly rejected plaintiffs' untimely ministerial error allegation filed over seven years after Commerce's section 129 partial revocation determination in 2013, and, correspondingly, whether the Court can order Commerce to correct an alleged "typographical error" in the section 129 partial revocation determination.

3. Whether the Court should grant plaintiffs' request that all documents from the section 129 proceeding be placed on this record.

4. Whether substantial evidence supports Commerce's deactivation of the combination rate excluded in the section 129 revocation determination because Red Garden no longer exists.

---

[1] The public record (P.R.) and confidential record (C.R.) refer to the record of the underlying administrative review.

5.      Whether Commerce's deduction of truck revenue from gross unit price is supported by substantial evidence and in accordance with law.

**STATEMENT OF FACTS**

**I.      Initiation Of Review**

On February 1, 2005, Commerce published the antidumping duty order covering shrimp from China.  *Certain Frozen Warmwater Shrimp from the People's Republic of China,* 70 Fed. Reg. 5,149 (Dep't of Commerce Feb. 1, 2005).

On March 28, 2013, Commerce partially revoked the order with respect to certain exporter/producer combinations pursuant to a decision under section 129, *i.e.*, 19 U.S.C. § 3538(c).  *Certain Frozen Warmwater Shrimp from the People's Republic of China: Notice of Implementation of Determinations Under Section 129 of the Uruguay Round Agreements Act and Partial Revocation of the Antidumping Duty Orders*, 78 Fed. Reg. 18,958 (Dep't of Commerce Mar. 28, 2013) (section 129 revocation), and accompanying IDM (section 129 revocation memo).  Commerce's partial revocation stated, in pertinent part, "{r}evocation for Red Garden is specific to: merchandise manufactured by Red Garden Food Processing Co., Ltd. . . . and exported by Shantou Red Garden Foodstuff Co., Ltd. or Red Garden Food Processing Co., Ltd." *Id.* at 18,959 n.14.

On May 2, 2019, Commerce initiated the fourteenth administrative review of the order covering shrimp from China, for the period February 1, 2018, through January 31, 2019.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 18,777 (Dep't of Commerce May 2, 2019).  Commerce initiated the review with respect to 102 companies, including Shantou RGFP and all entries not excluded from Shantou Foodstuff.  *See Certain Frozen Warmwater Shrimp from the People's Republic of China*, 85 Fed. Reg. 12,894

(Dep't of Commerce Mar. 5, 2020) (prelim. results) (P.R. 137), and accompanying Preliminary

Issues and Decision Memorandum at 2 (PDM) (P.R. 134).

On May 17, 2019, plaintiffs certified to Commerce that Shantou RGFP and Shantou

Foodstuff had no shipments or sales of merchandise during the period of review.  Plaintiffs' No

Shipments Letter (P.R. 16).  To confirm plaintiffs' claim, Commerce issued an inquiry to the

U.S. Customs and Border Protection (CBP).  CBP discovered [█] entries of shrimp exported by

Shantou RGFP during the period of review.  Commerce's No Shipments Inquiry Memo (Dep't

of Commerce July 23, 2019) (P.R. 27, C.R. 1).

On July 30, 2019, plaintiffs claimed that Shantou RGFP was excluded from the order,

pursuant to the section 129 revocation; thus, plaintiffs claimed CBP had incorrectly classified its

entries of shrimp as subject to antidumping or countervailing duties.  *See* Plaintiffs' Letter

Contesting Classification (July 30, 2019) (P.R. 30); PDM at 3.  Plaintiffs argued that the entry

identification number assigned to Red Garden during the investigation had been deactivated, so

that plaintiffs were unable to include the entry identification number in its entry documentation

to demonstrate that Red Garden was not subject to antidumping or countervailing duties.  *See*

Plaintiffs' Letter Pertaining to Red Garden (July 30, 2019) (P.R. 29, C.R. 4).

However, Commerce explained that it could not determine the relationship between

plaintiffs and Red Garden, and provided plaintiffs with an opportunity to supplement the record

clarifying the companies' relationship, if any.  *See* Commerce's Clarification Request Letter

(Dep't of Commerce Aug. 8, 2019) (P.R. 30, C.R. 5).  In response, plaintiffs stated that Red

Garden was excluded from the order.  *See* Plaintiffs' Name Change Response (Aug. 30, 2019)

(P.R. 31, C.R. 14).

On September 6, 2019, the petitioner, Ad Hoc Shrimp Trade Action Committee

(AHSTAC), alleged that prior to the section 129 partial revocation of the order, Shantou RGFP

had operated under a different name, Shantou Jin Cheng Food (Shantou JCF).  *See* AHSTAC

New Factual Information Submissions (Sept. 6, 2019) (P.R. 38-44); PDM at 3.  AHSTAC further

alleged that Shantou JCF had changed its name to Shantou RGFP shortly before Commerce's

section 129 revocation to take advantage of the revocation.  *See* PDM at 3.

## II.   <u>Successor-In-Interest Analysis</u>

As a result of the allegations by plaintiffs and AHSTAC, Commerce conducted a

successor-in-interest analysis to determine whether Shantou RGFP is a successor-in-interest to

Red Garden.  Successor-in-Interest Memo (Dep't of Commerce Feb. 28, 2020) (P.R. 136, C.R.

83) (SII Memo).  In the SII Memo, Commerce explained that in the investigation, Red Garden

had "itself referred to its name inconsistently," sometimes including "Shantou" before its name

and sometimes not.  *Id.* at 4.  Thus, in the final determination of the less-than-fair-value

investigation, Commerce had used Red Garden and no party had objected or alleged a ministerial

error allegation.  *Id.*

In Commerce's successor-in-interest analysis, it then examined factors such as:

(1) management; (2) production facilities; (3) supplier relationships; and (4) customer base.  *Id.*

at 5.

*Management*

With respect to management, Commerce explained that Red Garden had been established

in June 2003 as a joint venture, with a U.S. company, Red Chamber Co. (Red Chamber), owning

[█] percent through an affiliate, and Shantou Foodstuff owning the remaining [█] percent.  *Id.*

at 6.  Shantou Foodstuff, in turn, had two individual owners.  *Id.*  During the investigation, Red

Garden had had a three-member board of directors, a general manager, and a vice general

manager.  *Id.* at 6-7.  In December 2007, Red Garden had changed its name to Shantou JCF, but then "on January 20, 2013, Shantou JCF {had} changed its name (back) to Shantou RGFP."  *Id.* at 7.  Also in 2013, Red Chamber had withdrawn from the joint venture and with respect to the ownership of Shantou RGFP, the company was "now organized as a limited liability company," with no board of directors, and with Shantou Foodstuff continuing to hold [█] percent of the shares, and the remaining [█] percent "now held by [████████] and his wife, [████████ █]."  *Id.*

Thus, Commerce determined that there was a "significant change in ownership, control, and management between Red Garden (as it existed at the time of the {less-than-fair-value} investigation) and Shantou RGFP (now)."  *Id.* at 8.  Whereas Red Garden had been "a Sino-foreign {joint venture} where the foreign party was the [██████] owner and controlled the board of directors (which in turn controlled the company)," now Shantou RGFP is "fully owned by Chinese entities/individuals and [████████] maintains complete control over the company."  *Id.*  Commerce, thus, determined that "{t}hese changes weigh in favor of finding that Shantou RGFP (now) is materially dissimilar to Red Garden (2003)" and "is not the successor-in-interest to that company."  *Id.*

*Products and Production Facilities*

In examining the production facilities, Commerce explained record evidence demonstrated that all three companies—Red Garden (2003-2007), Shantou JCF (2007-2013), and Shantou RGFP (2013-period of review)—had used the same production facilities and "{t}he addresses in the business licenses for all three companies had the same address."  *Id.* at 8.  Regarding products, both Red Garden and Shantou RGFP had "processed and sold subject merchandise to the United States," whereas Shantou JCF had "shipped only non-subject

merchandise to the United States (*i.e.*, shrimp that was excluded from the order:  breaded shrimp and, before 2011 when it was added to the order, dusted shrimp)." *Id.*  Accordingly, Commerce determined "that the products and production facility, when viewed together with the totality of the circumstances over this time period and other information on the record, indicate and weighs in favor of finding that Shantou RGFP is not the successor-in-interest to Red Garden." *Id.*

*Supplier Relationships*

Regarding supplier relationships, Shantou RGFP claimed that "its suppliers {had} changed many times over the past 15 years" and stated, despite Commerce's requests for information as to its suppliers, that "it does not keep records for its suppliers prior to the {period of review} because it has no business reason to maintain this information." *Id.* at 9.  Commerce determined that there was "no evidence on the record with respect to this factor which supports Shantou RGFP's claim that it continues to operate as Red Garden, the company revoked from the *Order.*" *Id.*

*Customer Base*

Commerce then examined the customers to whom Red Garden had sold its subject merchandise in the United States, with the two customers being affiliated with Red Chamber, meaning that "{b}ecause Red Chamber owned [ ▮ ] percent of Red Garden, none of Red Garden's sales were made to an unaffiliated customer." *Id.*  Shantou JCF, in contrast, had "sold shrimp to at least [ ▮ ] customers in the United States, Canada, Chile, Mexico, and Malaysia." *Id.*  Shantou RGFP explained that it likewise did not maintain sales documentation beyond five years, and that there had also been documentation lost in a computer crash. *Id.*  But of the [ ▮ ] customers Shantou RGFP had identified as being customers during the Shantou JCF time period, [ ▮ ] were not [ ▮▮▮▮▮▮ ]. *Id.*  Finally, Shantou RGFP explained

that it had "sold to [█] customers located in [███████████████████████████ ███████████████████████████]," with only one of the customers affiliated with [████████].  *Id.*

Thus, Commerce determined that "the only overlap in customers among Red Garden, Shantou JCF, and Shantou RGFP is that they all sold to companies affiliated with [████ ████████]  *Id.*  Further, Commerce explained that Shantou RGFP "has significantly increased its customer base, such that it now sells to a number of new companies, which is a marked contrast to the situation during the period examined in the {less-than-fair-value} investigation." *Id.* at 10.  As a result, Commerce determined that "this factor weighs in favor" of finding that Shantou RGFP's "operations are materially dissimilar to Red Garden's."  *Id.*

*Other Factors*

Commerce then considered other factors which Shantou RGFP claimed supported its successor-in-interest status.  First, Commerce determined that record evidence did not support Shantou RGFP's position "that it changed its name to avoid harassment from its landlord's creditors and changed its name back once the threat of harassment was gone."  *Id.*  Commerce examined a sales contract from [████████████] that had transferred ownership of the property to a current owner of Shantou RGFP (which was confirmed by the local administering authority on [████████████]), and determined that, "by the date that Red Garden changed its name to Shantou JCF (*i.e.*, December 26, 2007)," its landlord's creditors "had already reached an agreement" with the landlord and the property had been sold to a current owner.  *Id.* at 10-11.  Commerce explained that Shantou RGFP's "claimed reasons for its name change to Shantou JCF" and then to Shantou RGFP "appear to be suspect."  *Id.* at 11.  Shantou RGFP also did not provide documentation, despite Commerce's request, to support why Shantou RGFP had still

been allegedly "bothered by debt collectors" after the real estate transfer in 2007, nor why the name change had not occurred until 2013.  *Id.*

Next, Commerce rejected Shantou RGFP's explanation that Shantou JCF had changed its name back to Shantou RGFP because of its well-known reputation.  *Id.*  As Commerce explained, "Shantou JCF changed its name to Shantou RGFP because Red Garden had its own separate antidumping duty rate (albeit via an exclusion), whereas Shantou JCF is considered part of the China-wide entity."  *Id.*  In effect, Shantou JCF had "unilaterally attempt{ed} to claim the cash deposit rate of (or in this case, an exclusion for) a predecessor company)," and should have instead "requested a changed circumstance review (CCR) to prove that it was entitled to that rate."  *Id.* at 12.

In summary, Commerce found that the "additional factors when viewed together with the totality of the circumstances weigh in favor of finding that Shantou RGFP is not the same company as Red Garden, and thus, it is not the successor-in-interest to that company."  *Id.*

## III.   <u>Preliminary Results</u>

In the preliminary results, Commerce determined that record evidence did not support a finding that Shantou Food Processing was the successor-in-interest to the revoked company, Red Garden.  *See* PDM at 6-8.  Thus, Commerce determined that the section 129 exclusion order did not apply to Shantou RGFP.  *Id.* at 8.

On May 13, 2020, plaintiffs alleged a ministerial error in Commerce's section 129 revocation, which Commerce rejected as untimely.  Rejection of Ministerial Error Allegation (Dep't of Commerce May 22, 2020) (P.R. 169).  Commerce's regulations require ministerial error comments to be filed five days after Commerce releases disclosure documents.  *See* 19 C.F.R. § 351.224(c)(2).  Commerce had released the signed, unpublished section 129 revocation

Federal Register notice on March 25, 2013.  *See Notice of Implementation of Determinations under Section 129 of Uruguay Round Agreements Act and Partial Revocation of Antidumping Duty Orders*, 78 Fed. Reg. 18, 958 (Dep't of Commerce Mar. 28, 2013).  Thus, the deadline for ministerial error comments was April 1, 2013, seven years prior to plaintiffs' ministerial error allegation made on May 13, 2020.  *See* 19 C.F.R. § 351.224(c)(2).

## IV.   <u>Final Results</u>

On December 23, 2020, Commerce published its final results.  Commerce continued to find that Shantou RGFP was not excluded from the order.[2]  *See* IDM at 1.

This action followed.

## <u>SUMMARY OF ARGUMENT</u>

First, Commerce's review of Shantou RGFP and successor-in-interest determination is supported by substantial evidence and in accordance with law.  In its successor-in-interest analysis, Commerce examined the management and control, products and production facilities, customers, and suppliers of Red Garden, Shantou JCF, and Shantou RGFP, and determined that a totality of the circumstances weighed in favor of finding that Shantou RGFP is not the successor-in-interest to Red Garden.  The Court should likewise decline to permit plaintiffs to supplement the administrative record and to place all section 129 documents on the record, in support of its argument that substantial evidence does not support Commerce's determination.

Second, Commerce's rejection of plaintiffs' ministerial error allegation with respect to the company name Commerce used in the section 129 revocation proceeding, submitted seven years after the deadline, is supported by substantial evidence and in accordance with law.  To the extent plaintiffs attempt to bootstrap a judicial challenge to the section 129 revocation

---

[2]  We address the factual contentions in each section.

proceeding, the claim would be time-barred.

Third, Commerce's decision to deactivate the combination rates is supported by substantial evidence and in accordance with law. And finally, Commerce's decision to deduct truck revenue from gross unit price is supported by substantial evidence and in accordance with law. Accordingly, this Court should sustain Commerce's final results.

## ARGUMENT

### I.   Standard Of Review

The Court will uphold Commerce's determination if it is supported by "substantial evidence on the record" and is otherwise "in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "more than a mere scintilla" of relevant and reasonable evidence to support the underlying conclusions. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The requisite proof amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" in light of "the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (footnote and internal quotation marks omitted).

That the Court may draw two inconsistent conclusions from the record "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) (citation omitted). Rather, when Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, as here, the agency's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

Thus, "the Court will not disturb an agency determination if its factual findings are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusion." *Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001); s*ee also Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) ("{T}he Court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*.") (citations and internal quotation marks omitted).  It is not necessary for Commerce to provide an explicit explanation where its path is reasonably discernible.  *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998) (citing *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987)).

## II.   Commerce's Successor-In-Interest Determination Of Shantou RGFP Is Supported By Substantial Evidence And In Accordance With Law

### A.   Commerce Lawfully Reviewed Shantou RGFP And Conducted A Successor-in-Interest Analysis

Despite receiving a timely request for review from AHSTAC, plaintiffs claim that Commerce had no authority to conduct an administrative review of Shantou RGFP and to conduct the successor-in-interest analysis, and that Commerce's decision to do so was an *ultra vires* act, "causing the initiation to be *void ab initio*."  Pls. Br. at 10, 26-27.  Plaintiffs also argue that Commerce had no legal authority to conduct a successor-in-interest analysis of Shantou RGFP, because Red Garden allegedly "could not have been revoked from the dumping order, because it does not exist and never existed."  *Id.* at 3-4.  As we explain below, these arguments are without merit.

Pursuant to 19 U.S.C. § 1675(a)(1)(B), once Commerce issues an antidumping duty

order, "{a}t least once during each 12-month period beginning on the anniversary of the date of publication of . . . an antidumping duty order," Commerce shall, upon request and after publication of notice of review, "review, and determine . . . the amount of any antidumping duty." 19 U.S.C. § 1675(a)(1)(B); *see also Fresh Garlic Producers Ass'n v. United States*, 83 F. Supp. 3d 1330, 1335 (Ct. Int'l Trade 2015).  A domestic interested party may request that Commerce conduct an administrative review of an antidumping duty order with respect to identified exporters and producers covered by the order.  19 C.F.R. § 351.213(b)(1).  Exporters and producers may request review of their own entries and importers may request review of the exporters or producers from whom they import.  *Id.* § 351.213(b)(2), (3).

Then, the "purpose of conducting a successor-in-interest analysis during an administrative review is to determine 'the appropriate rate to be assigned to entities affected by . . . some . . . change which raises the questions of the company's status in the proceeding.'"  *E. Sea Seafoods LLC v. United States*, 703 F. Supp. 2d 1336, 1352 (Ct. Int'l Trade 2010) (quoting *Brass Sheet and Strip from Canada*, 57 Fed. Reg. 20,460, 20,461 (Dep't of Commerce May 13, 1992)).  As this Court has explained, "{t}he successor-in-interest analysis was not explicitly created by statute or by regulation but is an agency practice designed to facilitate the proper implementation of the antidumping laws."  *Id*.

The Court has also held that, "'the successor-in-interest analysis is precisely the type of methodology Commerce is tasked with identifying and applying, and the Court must not direct Commerce on how to create that methodology.  Rather, the Court must defer to Commerce's methodology if it is reasonable.'"  *Marsan Gida Sanayi Ve Ticaret A.S. v. United States*, No. 09-00483, 2011 WL 546815, at 222, 230 (Ct. Int'l Trade Feb. 11, 2011) (quoting *JTEKT Corp. v. United States*, 675 F. Supp. 2d 1206, 1219 (Ct. Int'l Trade 2009)).

14

For example, in *Louis Dreyfus Citrus, Inc. v. United States*, 495 F. Supp. 2d 1338, 1355 (Ct. Int'l Trade 2007), the Court rejected plaintiff's challenge to a successor-in-interest determination after the order to which it applied was revoked, explaining that "Commerce has the discretion to define the scope of an investigation and there is no law prohibiting it from applying its successor-in-interest test as a mechanism to determine whether a certain producer should be included in the scope." The Court rejected plaintiff's arguments that there are any timing restrictions or limitations on when Commerce may conduct a successor-in-interest analysis and explained that "Commerce has discretion to apply the test outside of its conventional use when the need arises." *Id.* at 1354-55 & n.8 (citing *Valkia Ltd. v. United States*, Slip Op. 04–71, 2004 WL 1375747 (Ct. Int'l Trade June 18, 2004)); *see also Peer Bearing Company-Changshan v. United States*, 884 F.Supp.2d 1313, 1327 (Ct. Int'l Trade 2012) (explaining Commerce did a successor-in-interest analysis during the administrative review).

Here, plaintiffs do not dispute that the order was still in effect, but argue that Commerce did not have the authority to conduct a successor-in-interest analysis because Shantou RGFP had already been excluded. *See* Pl. Br. at 26-27. However, the very purpose of the successor-in-interest analysis is to determine whether a company's status in the proceeding has changed, *see E. Sea Seafoods*, 703 F. Supp. 2d at 1352, and AHSTAC alleged that Shantou RGFP had changed its name shortly before Commerce's section 129 revocation to take advantage of the revocation, but was not, in fact, the same company as Red Garden. *See* PDM at 3. Plaintiffs cite no law, nor are we aware of any, that would limit Commerce's ability to conduct a successor-in-interest analysis once a petitioner or an interested party has requested that Commerce initiate a review with respect to a certain company. *Id.* Indeed, Commerce explained in the final results that "{n}o party disputes that the name changes took place," and in "{p}rior proceedings,

Commerce concluded that a name change is sufficient to warrant a{ successor-in-interest} analysis, and that this analysis could occur in an {administrative review}."  IDM at 18; *see id.* at 11 ("Shantou RGFP fails to provide any explanation or cite to any precedent that suggests that Commerce lacks the authority to conduct a review or a{ successor-in-interest} analysis on excluded or revoked companies{.}").

Plaintiffs also mischaracterize Commerce's actual successor-in-interest determination, arguing that Commerce had no authority to conduct a changed circumstances review, alleging that Commerce improperly conducted the successor-in-interest analysis under the changed circumstances regulation, 19 C.F.R. § 351.216.  *See* Pls. Br. at 27.  Plaintiffs contend that Commerce can only initiate a changed circumstance review *after* it has received a request from an interested party.  *Id.* at 27.

But Commerce did not conduct a changed circumstances review.  *See* SII Memo at 5; IDM at 18-19.  Commerce explained that, while successor-in-interest analyses *can* occur within a changed circumstances review, Commerce has also made successor-in-interest determinations in the context of administrative reviews and investigations.  *See* IDM at 18-19; SII Memo at 5 n.24 (citing *Circular Welded Pipe from the United Arab Emirates*, 84 Fed. Reg. 44,845 (Dep't of Commerce Aug. 27, 2019), and accompanying IDM at 1; *Crystalline Silicon Photovoltaic Cells from the People's Republic of China*, 83 Fed. Reg. 35,616 (Dep't of Commerce July 27, 2018), and accompanying IDM cmt. 12; *Stainless Steel Bar from Spain*, 79 Fed. Reg. 63,081 (Dep't of Commerce Oct. 22, 2014), and accompanying IDM at 6; *Tapered Roller Bearings from the People's Republic of China*, 77 Fed. Reg. 2,271 (Dep't of Commerce Jan. 12, 2012), and accompanying IDM at cmt. 4).  And even if Commerce had conducted a changed circumstances review, which it did not, Commerce may conduct a changed circumstances review of a

determination "whenever {Commerce} receives information concerning, *or* a request from an interested party for a review of . . . which shows changed circumstances sufficient to warrant a review of such determination."  19 U.S.C. § 1675(b)(1) (emphasis added).

Thus, plaintiffs do not provide any legal support for their argument that Commerce did not have the authority to conduct a successor-in-interest inquiry or that it was somehow *ultra vires*, and Commerce's determination to conduct such an inquiry is in accordance with law.

### B.    Substantial Evidence Supports Commerce's Determination That Shantou RGFP Is Not The Successor-In-Interest Of Red Garden

Substantial evidence supports Commerce's determination that Shantou RGFP is not the successor-in-interest of Red Garden, which was excluded from the Order.  *See* IDM at 21-25; *see generally* SII Memo.  First, plaintiffs argue that Shantou RGFP was collapsed with Shantou Foodstuff and that the entire single entity was excluded from the Order in 2013.  *See* Pls. Br. at 10-20.  Plaintiffs also argue that Commerce's analysis is "predicated" to comparing Shantou RGFP to a "fictitious" company, Red Garden, in the section 129 revocation.  *See* Pls. Br. at 28-29.  Further, plaintiffs argue that Shantou RGFP's and Red Garden's "operations were identical pre- and post-Order," and that the Court should find that they are the same company.  *See id.* at 30-35.  These arguments are not supported by the record.

In making a successor-in-interest determination, Commerce examines several factors including, but not limited to, changes in: (1) management, (2) production facilities, (3) suppliers, and (4) customer base.  *See*, *e.g.*, *Crystalline Silicon Photovoltaic Cells from the People's Republic of China*, 83 Fed. Reg. 35,616 (Dep't of Commerce July 27, 2018), and accompanying IDM at cmt. 12 (finding a company to be a successor-in-interest because there were no changes to the leadership, management structure, production facilities, supplier relationships, or customer base); *Tapered Roller Bearings from China*, 77 Fed. Reg. 2,271 (Dep't of Commerce Jan. 17,

2012) (final admin. review), and accompanying IDM at cmt. 4.

Although no one, or even several, of these factors, will necessarily provide a dispositive indication of succession, Commerce will generally consider one company to be the successor to another company if its resulting operation is not materially dissimilar to that of its predecessor, and it will accord the new company the same antidumping treatment as its predecessor.  SII Memo at 5 (citing *Fresh and Chilled Atlantic Salmon from Norway*, 64 Fed Reg. 9,979, 9,980 (Dep't of Commerce Mar. 1, 1999).  "The question in a successor-in-interest determination is whether an alleged successor should qualify for the cash deposit rate last calculated for the alleged predecessor."  *E. Sea Seafoods LLC*, 703 F. Supp. 2d at 1352.  Thus, Commerce will assign the new company the cash deposit rate of its predecessor if the "totality of circumstances" supports that, with respect to the production and sale of the subject merchandise, the new company operates as the same business entity as the prior company.  SII Memo at 6.

1. **Substantial Evidence Does Not Support Plaintiffs' Claims That Shantou RGFP Was Collapsed With Shantou Foodstuff, And Excluded From The Order In The 2013 Section 129 Proceeding**

Plaintiffs devote a substantial portion of their brief arguing that Commerce's successor-in-interest analysis is not based on substantial evidence, relying not on record evidence, but on information from the investigation, the related investigation verification that occurred in 2004, and the section 129 revocation proceedings, among other extra-record citations.  *See* Pls. Br. at 13-22.  They further argue that Commerce routinely treated Shantou Foodstuff and Shantou RGFP as the "same entity" and/or affiliated, and that Shantou RGFP was "implicitly excluded" from the Order.  *See id.* at 17-21.  Relatedly, plaintiffs acknowledge that numerous facts alleged in their brief are predicated on documents not on the administrative record.  *See id.* at 21.  Yet, rather than detail which documents would support their claims, plaintiffs ask the Court to permit

them to enter all documents from the Section 129 proceeding onto the record of this proceeding, despite the fact that such documents were not on the record before Commerce. *Id.* For the following reasons, the Court should decline to consider these arguments.

First, to the extent that plaintiffs raise these arguments for the first time in this Court, Commerce had no opportunity to address whether such arguments would undermine, or even be relevant to, the successor-in-interest analysis Commerce conducted. *See Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1370, 1381 (Fed. Cir. 2013) ("{T}he CIT generally takes a 'strict view' of the requirement that parties exhaust their administrative remedies . . . .") (quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)). In other words, what is not before the Court is what Commerce had allegedly determined in the investigation, prior segments of the administrative review, or even the 2013 section 129 revocation determination with respect to respect to Shantou Food Processing, and whether such earlier determinations would contravene Commerce's successor-in-interest analysis in the final results. *See Qingdao Sea–Line Trading Co. Ltd. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014) ("each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record.").

Rather, here, Commerce determined in the final results that substantial evidence supported AHSTAC's allegation that Shantou RGFP was *not* the successor-in-interest to Red Garden, as we explain further in the next section. *See generally* SII Memo; IDM at 19-25; *Qingdao*, 766 F.3d at 1387.

Second, to the extent plaintiffs ask the Court to consider documents from the section 129 proceeding, which are not on the record, it should decline to do so. "Except in very limited circumstances, this court's review of Commerce's determination is limited to the record before

it." *Ass'n of Am. Sch. Paper Suppliers v. United States*, 683 F. Supp. 2d 1317, 1320 (Ct. Int'l Trade 2010) (citing 19 U.S.C. § 1516a(b)(2)(A)).  "This is because the administrative record contains all information which was presented to, or obtained by, Commerce during the course of the administrative review." *Id.* (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).  Thus, "{t}he scope of the record for purposes of judicial review must be based upon information which was before the relevant decision-maker and was presented and considered at the time the decision was rendered." *Id.* at 1323-24 (citation omitted).

The information plaintiffs cite is not on the record of this fourteenth administrative review.  Plaintiffs are now "in an awkward position to argue that Commerce abused its discretion by not relying on evidence that {plaintiffs themselves} failed to introduce into the record," when Commerce had invited "interested parties to submit relevant factual information." *QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011).  Indeed, Commerce had already provided plaintiffs with an opportunity to provide any information necessary to substantiate their claim that Shantou RGFP was the successor-in-interest to Red Garden, including documents from the section 129 proceeding.  *See* Commerce's Clarification Request Letter (Dep't of Commerce Aug. 8, 2019) (P.R. 30, C.R. 5); SII Memo at 2-3.  But despite Commerce's offer, plaintiffs failed to place the documents they now claim are necessary for the Court's analysis of the relationship between Red Garden and Shantou RGFP from the section 129 revocation on Commerce's record.  And plaintiffs fail to explain why, when given the opportunity to place such documents on the record for Commerce's consideration, it failed to do so.  *See* SII Memo at 2-3.  Permitting plaintiffs to place such documents on the record now, which Commerce did not consider in the underlying administrative review, would impermissibly "'convert the . . . standard into effectively *de novo* review.'" *Ass'n of Am. Sch. Paper Suppliers*, 683 F. Supp. 2d at

1321 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)).

For these reasons, the Court should decline to consider these arguments because they are not based on record evidence, let alone substantial evidence.  *See id.*

> ### 2. Commerce's Determination That Shantou RGFP Is Not The Successor-In-Interest Of Red Garden Is Supported By Substantial Evidence

Substantial record evidence supports Commerce's determination that Shantou RGFP is not the successor-in-interest of Red Garden.  *See* IDM at 21-25; *see also generally* SII Memo. Plaintiffs' claims that Shantou RGFP is the same company as Red Garden with respect to management, production facilities, supplier relationships, and customer base are belied by substantial record evidence.  *See* Pls. Br. at 30-35.  In addition, although plaintiffs repeatedly argue that Red Garden is a "fiction," it also argues that "{r}egardless {of} who owned" Red Garden and Shantou RGFP, "its operations were identical pre- and post-Order."  *Id.* at 30.

As a general matter, plaintiffs' brief fails to comply with this Court's procedural rules, which state "{a}ll references to the administrative record must be made by citing the portions of the record relevant to the factual or legal issues raised."  RCFC 56.2(c)(2).  This Court has previously ruled that arguments "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not merely enough to mention a possible argument in the most skeletal way, leaving the court do counsel's work, create the ossature for the argument, and put flesh on its bones."  *MTZ Polyfilms, Ltd. v. United States*, 659 F. Supp. 2d 1303, 1308 (Ct. Int'l Trade 2009) (citation omitted).

Aside from the Statement of Facts section, plaintiffs' brief is conspicuously devoid of supporting references to the administrative record, despite supposedly relying on facts from the

administrative proceeding; the deficiencies are especially prevalent in this section of their brief. For example, plaintiffs argue that substantial evidence supports their position that Commerce erred in its successor-in-interest determination, yet largely fail to cite the administrative record to support their fact-intensive argument. *See* Pls. Br. at 30-35. Plaintiffs' bare assertions, thus, place the burden of supporting their arguments on the Court and the parties to ascertain whether their arguments are supported by record evidence or even accurate. *See MTZ Polyfilms*, 659 F. Supp. 2d at 1308.

To the extent the Court does not deem plaintiffs' argument waived, Commerce explained in the final results why substantial evidence supports its determination that Shantou RGFP is not the successor-in-interest to Red Garden. *See* IDM at 21-25. In reviewing record evidence, Commerce determined there was a significant change in the ownership, control, and management from the prior company, Red Garden, to the new company, Shantou RGFP. *See id.*; SII Memo at 8. We address the various factors, below.

First, plaintiffs argue that the management factor was not a significant change because the final results focused on ownership and that "Commerce made no finding that the actual management had changed or that Shantou RGFP {had} operated any differently in sales of subject merchandise to the U.S. in the two time periods." Pls. Br. at 30-31. Specifically, plaintiffs argue that Commerce's analysis of the management factors overlooked evidence that both companies had shared the same general manager. *Id.* at 31. Yet, plaintiffs do not deny Commerce's finding regarding the change in ownership and control of the company, and also fail to acknowledge that a change in ownership and control of a company is a significant factor in assessing whether the company, as it exists today, is the successor-in-interest to the alleged predecessor. *See* IDM at 21. As Commerce explained in the final results, "{d}uring the {less-

than-fair-value} investigation, {Red Garden} was a Sino-foreign joint venture and was controlled by a board of directors (which in turn controlled the company)," whereas Shantou RGFP is now "fully owned by Chinese entities/individuals" with no board of directors. *Id.*; SII Memo at 7-8. Further, [⬛⬛⬛⬛], the general manager that both companies shared, was actually a part owner of Shantou Foodstuff and was an indirect shareholder of Red Garden. SII Memo at 7-8; *see also* IDM at 24 ("while the general manager may be the same, there were significant ownership and organizational changes that indicated that the operations of Shantou RGFP and {Red Garden} are materially dissimilar.").

Second, plaintiffs argue that Commerce "admitted that the production facilities and address remained the same, and argued that Commerce "misrepresented what the Red Garden companies did in the {period of investigation}." Pls. Br. at 31-32. Commerce also determined that record evidence supported finding a material difference with respect to the products sold by both companies, that is, Red Garden and Shantou RGFP. *See* SII Memo at 8; IDM at 21. Despite the shared company address and facilities, Commerce found that the companies had produced different products. *See* SII Memo at 8; IDM at 24 ("the companies {may} share the same address, but this fact does not support that the companies have similar operations"). For example, excluded company Red Garden had sold subject merchandise to the United States during the investigation; however, Shantou RGFP had previously sold non-subject merchandise to the United States under the name Shantou JCF, but once the name reverted to Shantou RGFP, it again "processed and sold subject merchandise to the United States." IDM at 21; *see* SII Memo at 8. Plaintiffs do not dispute this change in production by the companies. *See* IDM at 24 ("between 2007 and 2013, there was a complete change in the product line, switching from subject merchandise to non-subject merchandise, which would indicate that the operations are

materially dissimilar, even if those different products were produced at the same location").

Third, as to supplier relationships, although Commerce acknowledged that there was limited information, plaintiffs argue that "Commerce merely speculated to determine that Shantou RGFP has changed suppliers too significantly to be the same company it was in the {period of investigation}."  Pls. Br. at 32.  Although plaintiffs did not provide the specific information requested by Commerce regarding its supplier relationships, plaintiffs explained that their supplier relationships had changed several times during the previous fifteen years.  *See* SII Memo at 9; IDM at 21-22.  Commerce determined that the lack of information did not support Shantou RGFP's claim that it had continued to operate as a successor-in-interest of Red Garden.  *See* IDM at 21-22.

Fourth, regarding customers, in responding to Commerce's requests for information, plaintiffs had stated that they could not recall information regarding their customer base and that customer-related documentation had been lost in a computer crash.  Plaintiffs' Nov. 22, 2019 Questionnaire Response (P.R. 76, C.R. 10-27) at exhibit SA-25; SII Memo at 9. When Commerce examined the record evidence, it concluded that Shantou RGFP and the excluded company, Red Garden, had only shared one customer.  *See* SII Memo at 9-10; IDM at 21-22. Moreover, record evidence demonstrated that Shantou RGFP's customers included several new companies, which was drastically different than Red Garden's customer base during the investigation.  *See* SII Memo at 10.  Commerce explained in the final results that this "significant increase in the customer base" "is a marked contrast to the situation during the period examined in the {less-than-fair-value} investigation."  IDM at 22.

 Plaintiffs do not deny Commerce's findings yet accuse Commerce of trying to "twist the facts" and argue that Shantou RGFP had met Commerce's "basic criteria," but then Commerce

added additional factors.  Pls. Br. at 32-33.  However, Commerce determined that these several other factors likewise supported its finding that Shantou RGFP is not the successor-in-interest to Red Garden.  *See* SII Memo at 10-12; IDM at 22-24.

Among other things, Commerce determined that plaintiffs' explanations for the various name changes were not supported by record evidence.  *See* SII Memo at 10-12; IDM at 22-24. In the final results, Commerce rejected plaintiffs' justification that Shantou RGFP had changed its name in order to avoid "harassment from {a} prior landlord's creditors because of similar names," because Shantou RGFP had "submitted no documentation to support this claim."  IDM at 22.  Instead, record evidence supported a pattern of names changes coinciding with changes in the cash deposit rates.  *See id.* at 22-24; SII Memo at 10-12.

For example, record evidence demonstrated that Red Garden was established on June 25, 2003, but on September 12, 2007, after it was assigned a cash deposit rate of 112.81 percent, it changed its name to Shantou JCF on December 26, 2007.  *See* Plaintiffs Nov. 12, 2019 Questionnaire Response at 12 (P.R. 72, C.R. 9); *Certain Frozen Warmwater Shrimp from the People's Republic of China*, 72 Fed. Reg. 52,049 (Dep't of Commerce Sept. 12, 2007) (final results); SII Memo at 11; IDM at 23.  Then, after Commerce announced the preliminary calculations in the section 129 revocation proceeding on December 7, 2012, finding a 0.00 percent rate for Red Garden, to which there were no claims by parties of an error in the identifying name, Shantou JCF changed its name to Shantou RGFP on January 20, 2013.  *See Section 129 Revocation*, 78 Fed. Reg. at 18,959; Plaintiffs' Dec. 23, 2019 Questionnaire Response at 23 (P.R. 93-98, C.R. 31-46); SII Memo at 11; IDM at 23.  Indeed, plaintiffs even acknowledged that their final name change, from Shantou JCF to Shantou RGFP, was to access a separate antidumping rate: "Since the name Shantou Red Garden Food Processing had well

known {*sic*} reputation in the seafood industry and also had separate {*sic*} anti-dumping rate case in USA . . . they changed the name from Shantou JCF {Shantou Jin Cheng Food} back to Shantou RGFP {Shantou Red Garden Food Processing}."  Plaintiffs' Dec. 23, 2019 Questionnaire Response at 23 (P.R. 93-98, C.R. 31-46); SII Memo at 11.  But as Commerce explained in the final results, these changes were more than just name changes and Commerce determined that record evidence did not support finding that Shantou RGFP is the successor-in-interest to Red Garden.  *See* SII Memo at 13; IDM at 23-25.

Further, plaintiffs argue that they recorded each name change, maintained business licenses, and that the Chinese government recognized these name changes.  *See* Pls. Br. at 33. Plaintiffs do not, however, provide any record evidence to counter Commerce's finding that the name changes occurred to take advantage of changes in cash deposit rates.  *See* SII Memo at 11; Pls. Br. at 28-35.  Instead, plaintiffs merely state "record evidence indicated that the name changes occurred not to claim another company's deposit rate," without any supporting reference to record evidence.  Pls. Br. at 34.  And, as Commerce determined, more than just a name change occurred such that Shantou RGFP was not the successor-in-interest to Red Garden.  *See* IDM at 21-25.

Also, plaintiffs repeatedly fail to explain how any record evidence detracts from Commerce's determination that Shantou RGFP is not the successor-in-interest to Red Garden in accordance with Commerce's successorship analysis.  *See* Pls. Br. at 31-34.  They do not deny many of the facts on which Commerce relied; rather, they claim that Commerce misrepresented facts, relied on speculation, and that not a "scintilla of evidence" exists in Commerce's analysis. *Id.* at 33.  But plaintiffs fail to acknowledge that Commerce relied upon information provided by them during the administrative review to determine that Shantou RGFP is not the successor-in-

interest to Red Garden.  *See* SII Memo at 6-12.

Finally, while plaintiffs repeatedly argue that Red Garden is a "fictitious" company and no successor-in-interest analysis can therefore occur, Pls. Br. at 3-4, 13-14, Commerce explained in the final results that it was "not comparing Shantou RGFP to some non-existent company, but to the company that was reviewed in the {less-than-fair-value} investigation."  IDM at 24.  Commerce explained that this was "abundantly clear through {its} citation in the SII Memo, which cites information that Shantou Red Garden Foods[3] provided for the company that existed during the {less-than-fair-value} investigation."  *Id.*

Thus, the Court should find that "evidence in the record documenting the change in ownership, the change in management, and the change in supplier arrangement constitutes more than a mere scintilla of evidence in support of the agency's determination that {Shantou RGFP} is not a successor-in-interest."  *Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004).  As Commerce explained, Shantou RGFP did not dispute that it "underwent significant corporate changes with respect to ownership, management, production lines, suppliers, customers, and other factors, demonstrating it was not the successor to {Red Garden}."  IDM at 25.  And Shantou RGFP also did not "explain how these significant changes could be considered minor changes that occur during a company's normal business operations."  *Id.*; *see also* SII Memo at 13 ("Considering {Commerce's} analysis of the factors and the totality of the circumstances regarding the successor-in-interest claim discussed above, {Commerce} recommend{s} finding that Shantou RGFP is not the successor-in-interest to Red Garden.").  Substantial evidence therefore supports Commerce's determination that Shantou RGFP is not the successor-in-interest of Red Garden.

---

[3] In the IDM, Shantou Red Garden Foods refers to, collectively, Shantou RGFP and Shantou Red Garden Foodstuff.

**III.    Plaintiffs' Ministerial Error Challenge To The Section 129 Determination Is Time-Barred**

Over seven years after Commerce's section 129 determination, plaintiffs argue that Commerce made a ministerial error.  *See* Pls. Br. at 20-21.  Specifically, plaintiffs claim that Commerce had made a "typographical error" in 2013 when it misidentified "Shantou Red Garden Food Processing Co., Ltd." (Shantou RGFP) as "Red Garden Food Processing Co., Ltd" (Red Garden) in the section 129 determination, where it listed companies excluded from the order.  *See id.*  As a result of the alleged ministerial error, plaintiffs claim that Shantou RGFP should be excluded from the order and that the administrative review should be void *ab initio*. *Id.* at 2.  Further, plaintiffs argue that "in equity, there is *no deadline* to correct certain administrative decisions, just one of those instances being decisions based on fraud."  *Id.* at 23 (emphasis in original).  These arguments are without merit.

The time to challenge the 2013 section 129 determination is now time-barred.  *See* 19 U.S.C. § 1516a(a)(2)(B)(vii) (stating that a summons is due within thirty days of publication in the Federal Register and complaint within thirty days thereafter).[4]  The final results of the fourteenth administrative review is the only challengeable determination currently before the Court, and the Court should find that it does not possess subject matter jurisdiction with respect to that specific claim.  *See Ford Motor Co. v. United States*, 992 F. Supp. 2d 1346, 1354 (Ct. Int'l Trade 2014) ("When subject matter jurisdiction is challenged, the plaintiff bears the burden of demonstrating that jurisdiction exists.").

In any event, the section 129 determination is an amended final determination governed in that proceeding by Commerce's investigation statutory provisions and regulations.  *See* IDM

---

[4] Even if plaintiffs were to claim jurisdiction under 28 U.S.C. § 1581(i), which is not the jurisdictional basis alleged in their complaint, the two-year limitation to file such a suit has also expired.  28 U.S.C. § 1581(i).

at 8 (citing 19 C.F.R. § 351.102(b)(47)).  Commerce explained in the final results that

"{b}ecause Commerce considers each segment of a proceeding separately, any ministerial error

allegation related to that segment *is limited to that segment*, and any determination made in the

section 129 inquiry are no longer subject to judicial review."  *Id.* (emphasis added).

Although plaintiffs characterize the alleged typographical error as a ministerial error, Pls.

Br. at 24-25, a ministerial error is an error "in addition, subtraction, or other arithmetic function,

clerical errors resulting from inaccurate copying, duplication, or the like, and *any other similar*

*type of unintentional error* which {Commerce} considers ministerial."  19 U.S.C. § 1673d(e)

(emphasis added); *see also* 19 C.F.R. § 351.224(f).  Parties are provided an opportunity to submit

comments to Commerce regarding ministerial errors "within five days" of the date disclosure

documents are released.  19 C.F.R. § 351.224(f).  Thus, as Commerce explained in the final

results, any ministerial errors resulting from Commerce's section 129 revocation were due in

early April 2013, and plaintiffs did not make a timely ministerial error allegation.  *See* IDM at 8;

*Notice of Implementation of Determinations under Section 129 of Uruguay Round Agreements*

*Act and Partial Revocation of Antidumping Duty Orders*, 78 Fed. Reg. 18, 958 (Dep't of

Commerce Mar. 28, 2013), and accompanying IDM (Mar. 4, 2013).

Regardless, Commerce explained that plaintiffs had also been on notice when the section

129 revocation was published in the Federal Register, and "interested parties should have

discovered and alleged a ministerial error in the section 129 inquiry during the time period

specified by {Commerce's} regulations."  IDM at 8-9; *see Suntec Indus. Co. v. United States*,

857 F.3d 1363, 1371 (Fed. Cir. 2017) (holding that "a Federal Register publication notice . . . is

sufficient as a matter of law to give notice to the named foreign exporters and producers.").  As

the United States Court of Appeals for the Federal Circuit has explained, in such a situation

where either no request to correct the error was made before the final determination, and "there was no showing that the error was apparent to Commerce (or should have been apparent) from the record or the final determination itself, Commerce *was not required to correct the alleged error after issuing its final determination*." *Alloy Piping Products, Inc. v. Kanzen Tetsu Sdn. Bhd.*, 334 F.3d 1284, 1293 (Fed. Cir. 2003) (emphasis added).

Yet plaintiffs did not challenge the section 129 determination or otherwise notify Commerce of any alleged error, to the contrary, Commerce determined in the final results that plaintiffs had changed company names to *benefit* from the exclusion determined in the section 129 revocation. *See* SII Memo at 11; IDM at 23. Further, Commerce explained in the final results that, even if it accepted Shantou RGFP's ministerial error claim, "it would have no effect on this instant review" because "the excluded producer/exporter" Red Garden "no longer exists." IDM at 9.

In the alternative, plaintiffs claim that although Commerce had committed a ministerial error, the regulation pertaining to ministerial errors is inapplicable because "Commerce did not disclose any calculations in the Section 129 revocation {t}hat contained any significant ministerial errors." Pls. Br. at 21. Plaintiffs further claim that there is "no Commerce regulation which would allow for reconsideration of the issue at bar" and that, as a matter of equity, the agency and the courts "have uniformly held that agencies must reconsider their decisions in such circumstances." *Id.*

But the statute governing ministerial error allegations in investigations does not contain a calculation requirement. *See* 19 U.S.C. § 1673d(e). To the contrary, the regulation tracks the statutory language in including "any other unintentional error which {Commerce} considers ministerial." 19 C.F.R. § 351.224(f). Indeed, when properly notified, Commerce routinely

corrects typographic spelling errors of respondent's names.  *See, e.g.*, *Hardwood Plywood Products from the People's Republic of China*, 83 Fed. Reg. 504, (Dep't of Commerce Jan. 4, 2018) (correcting the spelling of the names of producers on the exporter/producer list for separate rate recipients); *Small Diameter Graphite Electrodes from the People's Republic of China*, 77 Fed. Reg. 15,042 (Dep't of Commerce Mar. 14, 2012) (correcting the spelling of the respondent's name).  Here, however, there is no ministerial error capable of correction.  Shantou RGFP is a separate entity that Commerce determined was not the successor-in-interest to Red Garden, which was accessing the benefit of exclusion from the order when it is not entitled to such exclusion.  *See* IDM at 10-11.

Finally, the Court should also reject plaintiffs' claim that there is "no deadline" in equity for an agency to correct certain administrative decisions.  Pls. Br. at 22-23.  Plaintiffs make various unsubstantiated and vague allegations of fraud to make an end-run around any statute of limitations, and argues that if Commerce does not correct the alleged typographical error, then "{i}n essence, Commerce has committed fraud against" Shantou RGFP.  *See id.* at 3, 13, 22-24.

As an initial matter, the Court should decline to consider this argument, because as Commerce explained in the final results, plaintiffs made no "allegation of fraud in this proceeding, but merely a claim that Commerce {had} made a simple ministerial error seven years ago."  IDM at 9; *see also Yangzhou Bestpak Gifts & Crafts*, 716 F.3d at 1381; *Corus Staal BV*, 502 F.3d at 1379.  Even if this Court were to consider this specific argument, which it should not, "{w}hen evaluating whether or not the Government has acted in bad faith, a reviewing court must examine generally if there is a strong showing of bad faith or improper behavior before {it} may inquire into the thought processes of administrative decisionmakers."  *SKF USA Inc. v. United States*, 391 F. Supp. 2d 1327, 1329 (Ct. Int'l Trade 2005) (citation omitted).  Moreover,

plaintiffs must establish "clear and convincing evidence" to rebut the presumption "that public officials act in good faith when discharging their duties." *Id.*

And although plaintiffs cite *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1361-62 (Fed. Cir. 2008), in support of their argument that Commerce has the "inherent authority" to reconsider a final decision after learning it may have been "tainted by fraud," here, plaintiffs allege only that it would be "bad faith" or "fraud" if Commerce does not correct the name in the section 129 decision "to reflect" that Shantou RGFP was "the company that was collapsed with Shantou {Foodstuff} in the investigation and dumping order and, therefore, also excluded from the dumping order." Pls. Br. at 26. This allegation falls far short of constituting bad faith or fraud under any definition, considering that Commerce explained in the final results why it determined that Shantou RGFP was not the successor-in-interest of Red Garden. *See* IDM at 9-11, 21-25; *SKF USA*, 391 F. Supp. 2d at 1329.

Accordingly, Commerce's rejection of plaintiffs' untimely ministerial error is in accordance with law and supported by substantial evidence.

## IV.   Commerce Properly Deactivated The Combination Rate Excluded In The 2013 Section 129 Determination

Commerce properly deactivated the exporter/producer combination excluded from the section 129 revocation in 2013 during this administrative review. *See* IDM at 26-28. Plaintiffs argue that Commerce's deactivation was without substantial evidence and not in accordance with law, because although Shangtou RGFP "could not find any activity by these supplier companies (which had supplied it during the {period of investigation}) during this administrative review, this does not preclude these companies, if indeed inactive, from renewing business operations and operating in conjunction with the Red Garden companies in the future." Pls. Br. at 36. Without citing any authority in support, and nor are we aware of any, plaintiffs also assert that

because the less-than-fair-value determination "overtly did not include combination rates," Commerce now "has no authority to deactivate them" in the instant review.  *Id.*  The Court should reject these arguments.

Commerce's regulations state that "in the case of an exporter that is not a producer of subject merchandise, {Commerce} will limit an exclusion of the exporter to subject merchandise of those producers that supplied the exporter during the period of investigation."  19 C.F.R. § 351.204(e)(3)(i); *see also* IDM at 27 (citing Commerce's regulations and practice).  Such a practice is necessary to "prevent other producers from selling through an excluded exporter in order to avoid the imposition of duties."  *Antidumping Duties; Countervailing Duties; Final Rule*, 62 Fed. Reg. 27,296 (Dep't of Commerce May 19, 1997).

At the section 129 revocation, Commerce excluded the following exporter-producer combination:

> **Manufacturers:** Red Garden Food Processing Co., Ltd.; Chaoyang Jindu Hengchang Aquatic Products Enterprise Co., Ltd.; Raoping County Longfa Seafoods Co., Ltd.; Meizhou Aquatic Products Quick-Frozen Industry Co., Ltd.; Shantou Jinyuan District Mingfeng Quick-Frozen Factory; Shantou Long Feng Foodstuffs Co., Ltd.
> **Exporters:** Shantou Red Garden Foodstuff Co., Ltd.; Red Garden Food Processing Co., Ltd.

IDM at 26.  Commerce only excluded entries made by specific exporter-producer combinations cited in the section 129 revocation, where Commerce revoked the order, to the specific exporter/producer combinations noted above.  *Section 129 Revocation*, 78 Fed. Reg. at 18,959.

In the final results, Commerce found that, based on information provided by plaintiffs in their successor-in-interest claims, all of the other producers listed in the excluded exporter-combination rate were no longer in business.  *See* IDM at 28; Plaintiffs' Jan. 23, 2020 Questionnaire Response at 9.  Commerce also explained that, contrary to Shangtou RGFP's apparent misunderstanding of Commerce's exclusion practice, after the first administrative

review, it could not "use any sub-contractor (*i.e.*, producer) and continue to be eligible for the

exclusion." *Id.* at 27.  Thus, because Commerce determined that Shangtou RGFP "is not the

same entity as the company of the same name in the {less-than-fair-value} investigation,"

Commerce determined that "the producer/exporter combination excluded from the *Order* no

longer exists," *id.* at 28, and reasonably deactivated the combination rate in accordance with 19

C.F.R. § 351.204(e)(3)(i).  *Id.* at 27.

**V.     Commerce's Deduction Of Truck Revenue From Gross Unit Price Is Supported By**
**        Substantial Evidence And In Accordance With Law**

        Plaintiffs argue that the truck revenue field (TRUCKRVNU) was income, and that

Commerce "erroneously" deducted, instead of added, the truck revenue from gross unit price.

Pls. Br. at 37.  Yet, record evidence does not support plaintiffs' argument.

        Commerce calculates the U.S. price net of any price adjustments that are reasonably

attributable to subject merchandise.  *See* 19 C.F.R. § 351.401(c).  "Price adjustments" is defined

as a "change in the price charged for subject merchandise or the foreign like product, such as

discounts, rebates and post-sale price adjustments, that are reflected in the purchaser's net

outlay." *Id.* § 351.102(b)(38).

        During the administrative review, plaintiffs had explained the amount reported in the

truck revenue field was "a reduction of the transportation expense."  IDM at 28.  Record

evidence indicates that plaintiffs were responsible for delivering merchandise to their customers'

cold storage facilities.  *Id.*; Plaintiffs' Jan. 23, 2020 Questionnaire Response at 23-24 (P.R. 114,

C.R. 76-78).  However, each of plaintiffs' "customer{s} handled and paid for U.S. movement

expenses from the U.S. port to the cold storage facility" because plaintiffs' service provider for

delivering merchandise could only deliver to the U.S. port.  IDM at 28; Plaintiffs' Jan. 23, 2020

Questionnaire Response at 23-24.  Thus, plaintiffs had deducted the transportation expense from

the customer's invoice and reported the deduction to Commerce as income. *See* IDM at 28; Plaintiffs' Jan. 23, 2020 Questionnaire Response at 23-24.

In the final results, Commerce explained that it "disagree{d}" that the amounts "should be added to gross unit price" because based on Shantou RGFP's "own explanation, the expense for trucking the  goods from the U.S. port to th{e cold storage} facility was part of the invoice price."  IDM at 29.  While Shantou RGFP's internal freight provider "typically provides door-to-door service at an all-inclusive ocean freight price," during the period of review, "its freight provider was unable to provide freight services from the U.S. port to the cold storage facility on certain shipments, and, instead," Shantou RGFP's "U.S. customer arranged and paid for that freight."  *Id.*  Then, to compensate the U.S. customer, Shantou RGFP had "deducted the cost of the trucking expenses paid by its U.S. customer from the invoiced price (which included U.S. inland freight expense that Shantou RGFP did not provide)."  *Id.* at 29-30.

Indeed, plaintiffs concede that they had received a refund from truck services they had provided.  *See* Pls. Br. at 37.  Accordingly, Commerce reasonably determined based on record evidence, that plaintiffs were not receiving freight revenue, but were reducing the invoice value, and thereby reducing gross unit price.  *See* IDM at 30; *id.* ("In other words, Shantou RGFP was not receiving a freight revenue, but was reducing the invoice value, and thereby reducing gross unit price.").  Thus, Commerce's decision to deduct truck revenue from gross unit price is supported by substantial evidence and in accordance with law.

## **CONCLUSION**

For these reasons, we respectfully request that this Court deny plaintiffs' motion for judgment on the administrative record, sustain Commerce's final determination in its entirety and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

/s/ Kara M. Westercamp
OF COUNSEL:                          KARA M. WESTERCAMP
JESUS N. SAENZ                       Trial Attorney
Attorney                             U.S. Dept. of Justice
Office of the Chief Counsel          Civil Division
    for Trade Enforcement and Compliance   Commercial Litigation Branch
U.S. Department of Commerce          P.O. Box 480
Washington, D.C.                     Ben Franklin Station
                                     Washington, D.C. 20044
                                     Telephone: (202) 305-7571
                                     E-mail: Kara.M.Westercamp@usdoj.gov

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains approximately 10,028 words, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

/s/ Kara M. Westercamp

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE RICHARD K. EATON, SENIOR JUDGE**

|  |  |  |
|---|---|---|
| SHANTOU RED GARDEN FOOD PROCESSING CO., LTD., SHANTOU RED GARDEN FOODSTUFF CO., LTD., and OCEAN BISTRO CORPORATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 20-03947 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

## <u>ORDER</u>

Upon consideration of plaintiffs' motion for judgment upon the administrative record, responses thereto, reply, and all other papers, it is hereby

ORDERED that the motion is denied, and it is further

ORDERED that the Department of Commerce determination at issue in this action is sustained; and it is further

ORDERED that judgment shall enter in favor of the United States.


Dated: _____, 2021              _____
       New York, New York                                     JUDGE