## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| SHANTOU RED GARDEN FOOD PROCESSING CO., LTD., SHANTOU RED GARDEN FOODSTUFF CO., LTD., and OCEAN BISTRO CORPORATION )<br><br>Plaintiffs, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant. )<br><br>AD HOC SHRIMP TRADE ACTION COMMITTEE, )<br><br>Defendant-Intervenor. ) | **PUBLIC VERSION**<br><br>Court No. 20-03947 |

## SHANTOU RED GARDEN FOOD PROCESSING CO., LTD. SHANTOU RED GARDEN FOODSTUFF CO., LTD., AND OCEAN BISTRO CORPORATION'S REPLY BRIEF

John J. Kenkel
Alexandra H. Salzman
J. Kevin Horgan
Gregory S. Menegaz
Judith L. Holdsworth
**deKieffer & Horgan, PLLC**
Suite 410
1090 Vermont Avenue, N.W.
Washington, D.C. 20005
Tel:  (202) 783-6900
Fax:  (202) 783-6909
Email:  jkenkel@dhlaw.com
*Counsel for Plaintiffs*

Date: September 3, 2021

## TABLE OF CONTENTS

1. THE SECTION 129 DETERMINATION – AS CURRENTLY INTERPRETED BY COMMERCE - CANNOT BE THE BASIS FOR INITIATING THE UNDERLYING ADMINISTRATIVE REVIEW.......................................................1

    a. Commerce, in the Section 129 Determination, misinterpreted the dumping order numerous times. ....................................................1

        i.    Shantou RGFP does not exist as a separate entity under the antidumping duty order…………………………………………….. 1

        ii.    Combination rates do not tie RGFS and RGFP (with or without "Shantou") together…………………………………………… 2

        iii.    Commerce misinterpreted the dumping order in the Section 129 Determination by rescinding a non-existent combination rate…… 2

        iv.    Commerce misinterpreted the dumping order in the Section 129 Determination by citing Red Garden Food Processing Co., Ltd., incorrectly……………………………………………………… 3

        v.    Commerce misinterpreted the names of the parties with a dumping margin in the Section 129 Determination since the dumping order only cited RGFS.  Thus, the inclusion of Red Garden Food Processing in the Section 129 Determination was unwarranted and superfluous……………………………………… 3

    b. The Section 129 Determination should be correctly interpreted, if not corrected, because it caused substantial prejudice to Shantou RGFP........5

2. COMMERCE'S SUCCESSOR-IN-INTEREST DETERMINATION IS NOT BASED ON SUBSTANTIAL EVIDENCE. ………………………………… 8

    a. Commerce fails to substantiate its authority to conduct a successor-in-interest analysis.  Therefore, it was not lawful. ………………………… 8

    b. Substantial evidence supports Plaintiffs' claims that Shantou RGFP was collapsed with Shantou RGFS and, therefore, excluded from the antidumping duty order in the 2013 Section 129 revocation of the antidumping duty order, but for Commerce's misinterpretation of the dumping order. ……………………………………………………… 9

       **i.**     **Commerce' Arguments.** …………………………………….….... **9**

       **ii.**    **Plaintiffs' procedural reply.** …………………………………… **10**

       **iii.**   **Plaintiffs' Substantive Reply**…………………………………..**11**

             **1.**     **Shantou RGFP does not exist as a separate entity**
                    **under the antidumping duty order.** …………………..**12**

**3.**  **ALTERNATIVELY, IF AN ADMINISTRATIVE REVIEW WERE APPROPRIATELY INITIATED, SHANTOU RGFP OPERATES SUBSTANTIALLY THE SAME AS IT DID IN THE LTFV INVESTIGATION.. 14**

**4.**  **COMMERCE'S DEACTIVATION OF THE COMBINATION RATES IN THE SECTION 129 DETERMINATION WAS ULTRA VIRES, SINCE THEY WERE NEVER IMPLEMENTED UNDER THE DUMPING ORDER.  THIS IS A CLEAR MISINTERPRATION OF THE DUMPING ORDER**……………………………**18**

**5.**  **TRUCK REVENUE IS REVENUE, NOT AN EXPENSE, REGARDLESS HOW COMMERCE INTERPRETS IT, AND SHOULD BE NOT BE DEDUCTED FROM GROSS UNIT PRICE**……………………………………………….. **19**

**6.**  **CONCLUSION** …………………………………………………….. **21**

# TABLE OF AUTHORITIES

## CASES

*Allegheny Bradford Corp. v. U.S. 342 F. Supp. 2d 1172, 1190-91 (Ct. Intl. Trade, 2004)* ................... 4, 13

*American Farm Lines v. Black Ball Freight Services, 397 U.S. 532, 538-539 (1970)* .............................. 6

*Duferco Steel, 296 F.3d at 1097)* ........................................................................ 4, 13

*Hernandez-Luis v. Immigration & Naturalization Service, 869 F.2d 496, 498 (Ct. Appeals 9th Cir., 1989)* ................................................................................................ 7

*Intercargo Ins. Co. v. U.S., 83 F.3d 391, 394-395 (Fed. Cir. 1995).* ...................................... 5, 7

*Kemira Fibres  Oy v. United States, 61 F.3d 866, 875 (Fed. Cir. 1995)* ................................. 6, 7

*Laminated Woven Sacks Comm. v. United States, 34 CIT 906, 914, 716 F. Supp. 2d 1316, 1325 (2010)* ................................................................................................... 3, 13

*Reuters Ltd. v. FCC, 251 U.S. App. D.C. 93, 781 F.2d 946, 950 (D.C. Cir. 1986)* ..................... 9

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States, 40 CIT    ,   , 146 F. Supp. 3d 1331, 1336 n.27 (2016)* ............................................................................... 3,13

*Tak Fat Trading Co. v. United States, 396 F.3d 1378, 1383 (Fed. Cir. 2005* ....................... 3, 13

*Voge v. United States, 844 F.2d 776, 779 (Fed. Cir. 1988)* ........................................ 9

## STATUTES

19 U.S. C. § 1675(a)(1)(B)  ................................................................................... 1

19 U.S.C. § 1671d and e  ...................................................................................... 4

19 CFR 351.216(d)  ............................................................................................ 1

19 CFR 351.216(b)  ............................................................................................ 8

19 CFR 351.206(b).  ........................................................................................... 8

19 U.S.C. § 1675(b)(1) ........................................................................................ 9

**1. THE SECTION 129 DETERMINATION – AS CURRENTLY INTERPRETED BY COMMERCE - CANNOT BE THE BASIS FOR INITIATING THE UNDERLYING ADMINISTRATIVE REVIEW.**

Shantou RGFP's opening brief addressed the blatant errors in the Section 129 Determination concerning the name of Shantou Red Garden Food Processing Co., Ltd., it is equally important that not only were factual errors made by Commerce, but its interpretation of the antidumping duty order was flawed. As discussed herein, Commerce, by misinterpreting several aspects of the dumping order, made numerous impermissible interpretations of the order. We find no statute of limitations barring the correction of a misinterpretation of an order by a government agency, as demonstrated below. Commerce misinterpreted the dumping order five times in the Section 129 Determination: (1) Commerce determined that the two Red Garden companies were separate entities; (2) Commerce tied the two companies together only by virtue of a combination rate, (3) the Section 129 Determination attempted to revoke the combination rates; (4) the correct name of Shantou Red Garden, and (5) the inclusion of Red Garden Food Processing CO., Ltd., in the Section 129 Determination, was superfluous, since it was not named in the dumping order. As demonstrated below, each of these issues were decided by Commerce in the Section 129 Determination based on a misinterpretations of the dumping order.

**a.    Commerce, in the Section 129 Determination, misinterpreted the dumping order numerous times.**

**i.    Shantou RGFP does not exist as a separate entity under the antidumping duty order.**

As stated in Plaintiffs' opening brief, Commerce's Issues and Decision Memorandum ("IDM") in the LTFV investigation makes clear that the two Red Garden companies (RGFS and Shantou RGFP) were affiliated and that they enjoyed the same status as a result. Pl. 56.2 Br. at 13-26. Commerce's decision in the LTFV investigation boils down to one statement.

For the final determination, the Department notes that implicitly in the Department's decision to collapse Red Garden and RGFP is that the <u>resulting rate would apply to the entire collapse entity</u>, because to do otherwise would defeat the purpose of collapsing them in the first place.  The Department also notes that the rationale for collapsing applies to both producers and exporters if the facts indicate that producers of the like merchandise are affiliated as a result of their mutual relationship with an exporter.

IDM at 29-30. (Emphasis added).  Commerce's language is key for two reasons.  First, it refers to a single "entity."  Commerce treated RGFS and RGFP as one and any rate belongs to them jointly.  Second, a significant factual reason, beyond the reasons stated in the statute, is that Shantou RGFP is a subsidiary of RGFS.

> ii. **Combination rates do not tie RGFS and RGFP (with or without "Shantou") together.**

Commerce's Section 129 Determination misinterprets the fact that these two companies are a single entity, by continuing to argue that these two companies are separate. "Shantou RGFP is a <u>separate entity</u> that Commerce determined was not the successor-in-interest to Red Garden, which was accessing the benefit of exclusion from the order when it is not entitled to such exclusion.  Resp. Br. at 31 (emphasis added).  Thus, by misinterpreting the "single entity" determination in the dumping order, Commerce only ties these two companies together via a non-existent combination rate.  Below, we provide a separate section on the combination-rate argument.

> iii. **Commerce misinterpreted the dumping order in the Section 129 Determination by rescinding a non-existent combination rate.**

Again, Commerce misinterpreted the dumping order, by rescinding a non-existent combination rate in the Section 129 Determination.  The dumping order (LTFV Investigation IDM at 19) specifically refused to change policy, leaving in place rates only for the exporter and denouncing a combination rate.

2

iv. **Commerce misinterpreted the dumping order in the Section 129 Determination by citing Red Garden Food Processing Co., Ltd., incorrectly.**

Every questionnaire sent to the Red Garden companies in the LTFV investigation correctly named Shantou RGFP.  Moreover, for several administrative reviews immediately after the dumping order was published, Commerce correctly cited Shantou RGFP's name.  These provide substantial evidence that Commerce misinterpreted in the Section 129 Determination what it did prior to that determination, including in the dumping order.

v. **Commerce misinterpreted the names of the parties with a dumping margin in the Section 129 Determination since the dumping order only cited RGFS.  Thus, the inclusion of Red Garden Food Processing in the Section 129 Determination was unwarranted and superfluous.**

It is clear that no matter what language was used in the Section 129 revocation proceeding, it was <u>superfluous to cite RGFP for all the reasons previously referenced</u>.  The only legal requirement was to correctly cite Shantou RGFS, which Commerce did. No one argues that Shantou RGFS was not revoked from the dumping order.  Just as the antidumping duty order cited only RGFS, so, too, was the requirement in the Section 129 proceeding, to only cite RGFS.

Moreover, it is not justifiable for Commerce to create an ambiguity (e.g., the superfluous inclusion of RGFP's name, inclusion of non-existent combination rates, etc.) where none exists, as doing so would result in an interpretation that impermissibly conflicts with an order's terms. *See Laminated Woven Sacks Comm. v. United States, 34 CIT 906, 914, 716 F. Supp. 2d 1316, 1325 (2010)).* Also *See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States, 40 CIT    ,    , 146 F. Supp. 3d 1331, 1336 n.27 (2016) (citing Tak Fat Trading Co. v. United States, 396 F.3d 1378, 1383 (Fed. Cir. 2005)* ("[A] predicate for the interpretive process is language *in the order that is subject to interpretation."*)); *Laminated Woven Sacks, 716 F. Supp. 2d at 1326* ("All that is necessary before Commerce may consider secondary documents from the original

3

investigation is 'language in the order that is subject to interpretation.'" (quoting _Duferco Steel, 296 F.3d at 1097_)).

The statute requires both a final determination and an antidumping duty order.  19 U.S.C. 1671d and (e).  There is neither a statutory nor regulatory provision allowing Commerce to interpret these decisions in a manner contrary to what they provide.

Thus, even if the rescission of the Section 129 Determination is time barred as Commerce's response brief argues (Resp. Br. at 28-32), it is still open to interpretation and any misinterpretations and ambiguities must be corrected.  In the numerous court cases on misinterpretation cited herein, none limit such corrections to any time limits or statute of limitations.

As demonstrated above, Commerce's initiation of the underlying administrative review clearly conflicts with the terms of the antidumping duty order, as amended by the Section 129 proceeding.

Therefore, it is impermissible to allow Commerce's misinterpretations to stand.  ". . . Commerce cannot interpret an antidumping order in a manner contrary to the clear terms that were a consistent part of the investigation . . ." _Allegheny Bradford Corp. v. U.S._ 342 F. Supp. 2d 1172, 1190-91 (Ct. Intl. Trade, 2004).

Thus, since there is no ambiguity in the dumping order, any interpretation (intended or otherwise) of the order by Commerce is impermissible.  Thus, the Section 129 Determination was not empowered to interpret the dumping order.  Any conflict between the two documents must be resolved in favor of the order.

The initiation of the review nullifies the clear intent of the dumping order as modified by a correct interpretation of the Section 129 Determination.   It is also impermissible for Commerce to incorporate a selective reading of either the dumping order or the Section 129

proceeding, to justify its initiation of the administrative review.  Moreover, when Commerce was deciding whether to include Shantou RGFP in the administrative review, it clearly stated it was doing so because Shantou RGFP's name did not match the name excluded from the order in the Section 129 proceeding.

> Based on the record, Commerce is not able to determine the relationship between these two companies, if any. In order for Commerce to determine whether the entries in question are subject to the order, we require more information from your clients. Therefore, please provide clarification on the relationship, if any, between these two companies (*i.e.,* Red Garden Food Processing Co., Ltd., and Shantou Red Garden Food Processing Co., Ltd.).

Letter from Commerce to deKieffer & Horgan, August 8, 2019.  (C.R. 5; P.R. 30).   This shows clear intent on the part of Commerce to treat Shantou RGFP separately from RGFS, a clear violation of the order.   For this reason, all other claims by Commerce regarding the initiation of the administrative review are unavailing.

Thus, the initiation of the 2018-2019 administrative review was an *ultra vires* act and void *ab initio*.  Any determination made by Commerce in its final results is fruit of the poisonous tree and, therefore, without effect.

> **b.  The Section 129 Determination should be correctly interpreted, if not corrected, because it caused substantial prejudice to Shantou RGFP.**

The 129 determination is replete with errors, as noted, *supra*.  The Federal Circuit has noted that there is a "rule of prejudicial error" that applies to defects.  *Intercargo Ins. Co. v. U.S.*, 83 F.3d 391, 394-395 (Fed. Cir. 1995). ("Thus, Section 10e of the Administrative Procedure Act, 5 U.S.C. § 706 provides that in applying the rules governing the review of agency action, 'due account shall be taken of the rule of prejudicial error.'  That statute requires courts to apply conventional principles of harmless error when reviewing agency action." )

The courts have defined "substantial prejudice as "injury to an interest that the statute, regulation, or rule in question was designed to protect." *Intercargo* at 396. If an act by an agency is deemed to be merely procedural, a party must show substantial prejudice. *Kemira Fibres Oy v. United States,* 61 F.3d 866, 875 (Fed. Cir. 1995) (citations omitted). Arguably, if the government error is substantive (not procedural), substantial prejudice is not required. Here, the statutory requirement for an antidumping order, and everything that ensues from that, is substantial, and not procedural, since the order dictates the entire course of the rest of the proceeding, not only as it affects exporters encompassed within it, but as to parties excluded from it. The dumping order is protective of those rights.

The prejudice suffered by Shantou RGFP indeed is substantial. But for the numerous errors in interpretation in the Section 129 Determination and the institution of the underlying review and subsequent finding of dumping, Shantou RGFP would not be facing the wrongful imposition of millions of dollars in antidumping duties, when it should have been excluded from the dumping order if Commerce had performed its duty and correctly interpreted the dumping order when it issued the Section 129 Determination.

If substantial prejudice occurs, both the U.S. Supreme Court and the courts of appeal have determined that an agency action can be overturned. *American Farm Lines v. Black Ball Freight Services,* 397 U.S. 532, 538-539 (1970); *also see Kemira Fibres Oy v. United States,* 61 F.3d 866, 875 (Fed. Cir. 1995); and *Intercargo* at 394. The Supreme Court also determined that redress is available when "the ends of justice require it." *American Farm Lines* at 538-39. Shantou RGFP believes the "ends of justice," and substantial prejudice allow the Court to determine that the Section 129 Determination was so flawed that it Commerce should be required to interpret the dumping order correctly, thereby correcting the mistakes enumerated

above.  Only this will lead to a finding that the initiation of the underlying review was *ultra vires* and therefore void *ab initio.*

In other words, an antidumping duty order and a properly-framed/interpreted Section 129 Determination are a "condition precedent" to initiating an administrative review.  The current situation does not meet this requirement.   Nevertheless, the current Section 129 Determination, once it correctly interprets the dumping order, can be considered operative, leading to the proper conclusion that Shantou RGFP was excluded from the dumping order since, *inter alia*, it was an integral part of the single "entity" determined by Commerce in the dumping order.

"In fact, we strongly deplore Commerce's or any other agency's failure to follow its own regulations.  Such failure harms those who assume agency compliance and are prejudiced by the non-compliance." *Kemira* at 875-876.  Of course, this standard applies equally to Commerce's application of the statute regarding dumping orders.  Thus, this failure – in and of itself - also contributes to substantial prejudice.

In other words, substantial prejudice exists when the government error affects the outcome of the proceeding.

> To show prejudice, the alien must establish more than that he would have availed himself of the procedural protections; he must produce 'concrete evidence' that the violation had the potential for affecting the outcome of the proceeding.

*Hernandez-Luis v. Immigration & Naturalization Service*, 869 F.2d 496, 498 (Ct. Appeals 9th Cir., 1989) (citations omitted).  Clearly, the *Final Results* of the underlying review demonstrates the substantial prejudice.

Failure to correct this issue would result in two victims: (1) Shantou RGFP, and (2) the "national interest."  "The national interest in the regulation of importation should not fall victim to an oversight by Commerce."  *Intercargo* at 396 (citing *Kemira Fibres* at 873).

### 2.   COMMERCE'S SUCCESSOR-IN-INTEREST DETERMINATION IS NOT BASED ON SUBSTANTIAL EVIDENCE.

In its response brief, Commerce addresses the following issues: (1) Shantou Red Garden Food Processing Co., Ltd.'s ("RGFP") argument that it was collapsed with Shantou Red Garden Foodstuff Co., Ltd. ("RGFS") in the LTFV investigation and, therefore, was excluded from the antidumping duty order in the 129 Determination in 2013; (2) whether Commerce based its analysis regarding its successor-in-interest ("SII") decision by comparing Shantou RGFP to a fictitious company: Red Garden Food Processing Co., Ltd., as it existed during the investigation, which was erroneously named by Commerce in its Section 129 revocation in 2013; and (3) whether Shantou RGFP's operations vis-à-vis sales of subject merchandise to the U.S. were operational substantially the same pre- and post-order.  Resp. Br. at 11-28.

### a.   Commerce fails to substantiate its authority to conduct a successor-in-interest analysis.  Therefore, it was not lawful.

The issue is whether Commerce had the authority to conduct the successor-in-interest ("SII") inquiry.  Commerce's response brief merely states that it can conduct an SII whenever it has information that an inquiry is warranted.  It fails to mention that this authority is found in 19 CFR 351.216(d), which stems from 19 CFR 351.216(b), which provides only for initiation of an inquiry based on a request by an interested party.  There is no regulation (or statutory provision) granting Commerce the power to conduct an SII inquiry *sua sponte*.

Commerce, seems to agree that 19 CFR 351.216(b) is controlling.  "Plaintiffs cite no law, nor are we aware of any, that would limit Commerce's ability to conduct a successor-in-interest analysis once a petitioner or an interested party has requested that Commerce initiate a review with respect to a certain company."  Resp. Br. at 15 (emphasis added).  That is exactly the point in Plaintiffs' opening brief.  The domestic industry never met the terms of 19 CFR 351.206(b).

Commerce seems to tacitly agree, since nowhere in its response brief does it argue with Plaintiffs' statement that the domestic industry never made a request for an SII inquiry.

Further in its response brief, Commerce argues that it did not conduct a changed circumstances review ("CCR").  Resp. Br. at 16.  Yet, it admits to conducting the SII under the changed circumstances review regulation.  Commerce fails to provide any argument why the CCR regulation only sometimes applies to the SII inquiry.  Commerce cannot have it both ways: it cannot cite the CCR regulation only when it is beneficial to its actions, yet deny its applicability when it suits it.

Finally, Commerce cites the statute, 19 U.S.C. § 1675(b)(1) for its authority.  Resp.. Br. at 17.  That authority, however, is specifically implemented by 19 C.F.R. 351.206(b).  As stated above, nowhere does Commerce state that it has complied with the terms of this provision.  It is well-worn law that an agency must comply with its regulations.  *See Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988) ("government officials must follow their own regulations"); *Reuters Ltd. v. FCC,* 251 U.S. App. D.C. 93, 781 F.2d 946, 950 (D.C. Cir. 1986) ("elementary that an agency must adhere to its own rules and regulations.")

      **b. Substantial evidence supports Plaintiffs' claims that Shantou RGFP was collapsed with Shantou RGFS and, therefore, excluded from the antidumping duty order in the 2013 Section 129 revocation of the antidumping duty order, but for Commerce's misinterpretation of the dumping order.**

            **i. Commerce' Arguments.**

As part of its first argument, Commerce argues that plaintiffs have (1) relied on evidence not on the record, such as information from the 2004-2005 LTFV investigation, Section 129 revocation proceedings, and other, unnamed sources.  Commerce also argues that "plaintiffs acknowledge that numerous facts alleged in their brief are predicated on documents not on the

administrative record. *See Id*. at 21." Finally, Commerce argues that the court should not allow documents related to the Section 129 revocation determination to be entered into the record. Resp. Br. at 18-19.

Further, Commerce would have this Court believe that Plaintiffs have raised arguments for first time within this lawsuit, thereby failing to exhaust their administrative remedies. Specifically, Commerce argues that (1) what was determined by Commerce in the LTFV investigation, (2) in prior segments of the administrative review, and (3) the Section 129 revocation proceeding were not addressed by Plaintiffs in the 2018-2019 administrative review.

Additionally, Commerce asks the Court to not consider any documents from the Section 129 proceeding. It argues that only in limited situations may a court allow supplementation of the record. Since the underlying documents are not on the record, Plaintiffs' arguments in this regard are not based on substantial evidence on the record. Resp. Br. at 19-20.

Finally, Commerce claims that Plaintiffs did not submit any of the so-called missing documents (see above) on the record of AR 2018-2019. Resp. Br. at 20. Accordingly, according to Commerce, the Court should not entertain any of Plaintiffs' arguments regarding SII.

### ii.     **Plaintiffs' procedural reply**.

Commerce's argument that Plaintiffs rely on information not on the record of the underlying administrative review is incorrect. First, reference to the final determination of the LTFV investigation (2004) and antidumping duty order (2005) are Federal Register notices, the type of which this Court routinely takes judicial notice. Second, reference the Issues and Decision Memorandum for the final determination **is** on the record of the underlying proceeding. *See* Comments on New Factual Information Regarding Shipments by Red Garden Food Processing CO., Ltd., submitted July 30, 2019 by RGFP, Exhibit 5. (C.R. 4; P.R. 29). Third,

reference to the Section 129 revocation proceeding also is a Federal Register notice, the type of which this Court routinely takes judicial notice.

Thus, these three documents are on the record of the underlying administrative review, contrary to assertions by Commerce.

The second broad issue is that Commerce argues that Plaintiffs have raised for the first time issues in its opening brief that were not included in its numerous submissions in the underlying review. Again, this is not true. Specifically, throughout the administrative review, Plaintiffs addressed every issue stated in their opening brief. For example, RGFP's case brief, both in the narrative and in Exhibit 1 (letter dated October 18, 2019) encompasses every argument contained in their opening brief. (C.R. 102-103; P.R. 175-176). *Also see* Plaintiffs' rebuttal brief. (C.R. 101; P.R.16). It is noteworthy that Commerce does not cite a single, specific issue on which Plaintiffs failed to exhaust their administrative remedies. Rather, it simply makes a broad assertion.

Third, Commerce argues that the Section 129 revocation proceeding, for the above reasons, should not be considered; primarily because relevant documents are not on the record of the underlying review. As stated, above, Plaintiffs rely on the Federal Register notice in that proceeding. Courts routinely take judicial notice of Federal Register notices. There are no other relevant documents to the Section 129 proceeding that need to be placed on the record.

Finally, Commerce (again) complains that Plaintiffs did not place on the record any of the alleged missing documents. While this argument is repetitive, since Commerce already cited this issue, as demonstrated above, all pertinent documents are on the record of the underlying administrative review. Nothing is missing.

Accordingly, the Court should entertain all of Plaintiffs' arguments.

### iii.    Plaintiffs' Substantive Reply.

11

### 1. Shantou RGFP does not exist as a separate entity under the antidumping duty order.

As stated in Plaintiffs' opening brief, Commerce's Issues and Decision Memorandum ("IDM") in the LTFV investigation makes clear that the two Red Garden companies (RGFS and Shantou RGFP) were affiliated and that they enjoyed the same status as a result, i.e., as a single entity. Pl. 56.2 Br. at 13-26.   It bears repeating: Commerce's decision in the LTFV investigation and antidumping order boils down to one statement.

> For the final determination, the Department notes that implicitly in the Department's decision to collapse Red Garden and RGFP is that the resulting rate would apply to the entire collapse entity, because to do otherwise would defeat the purpose of collapsing them in the first place. The Department also notes that the rationale for collapsing applies to both producers and exporters if the facts indicate that producers of the like merchandise are affiliated as a result of their mutual relationship with an exporter.

 IDM at 29-30. (Emphasis added).  Commerce's language is key for two reasons.  First, it refers to a single "entity."  Commerce treated RGFS and Shantou RGFP as one and any rate belongs to them jointly.  Second, a significant factual reason, beyond the reasons stated in the statute, is that Shantou RGFP is a subsidiary of RGFS.

In addition, as noted above, citing RGFP as a separate entity and tying it to RGFS only via a combination rate, Commerce unlawfully misinterpreted the dumping order, as to (1) not only the two companies being a single entity; (2) RGFP being tied to RGFS only via a combination rate particularly when no combination rate was issued (and, in fact, the combination rate was expressly rejected by Commerce; (3) further misinterpreting the dumping order by revoking non-existent combination rates; (4) misinterpreting the dumping order by not including "Shantou" in RGFP's name; and (5) not inserting the full, correct name of Shantou RGFP, if that were deemed appropriate. The details behind each of these misinterpretations is provided, *supra.*

Plaintiffs believe all five issues, above, are important.  However, point (5), above, (inclusion of Shantou RGFP in the Section 129 Determination is unwarranted under the interpretation analysis necessary.  It is clear that no matter what language was used in the Section 129 revocation proceeding, it was <u>superfluous to even cite RGFP separately</u>.  The only legal requirement was to correctly cite Shantou RGFS, which Commerce did, because only it was cited in the dumping order.

As noted, *supra,* it is not justifiable for Commerce to create an ambiguity (the superfluous inclusion of RGFP's name) due to its many misinterpretations where none exists, as doing so would result in an interpretation that impermissibly conflicts with an order's terms. *See Laminated Woven Sacks, ̲Shenyang Yuanda, Tak Fat, etc.,* which are detailed in the first section of this brief.  Commerce's ambiguity of Shantou RGFP's name in the Section 129 proceeding plainly conflicts with the dumping order's terms.

Here, Commerce's initiation of the underlying administrative review clearly conflicts with the terms of the antidumping duty order as amended by the Section 129 proceeding: RGFS and Shantou RGFP are the same "entity."  Therefore, it is impermissible for Commerce to separate them when it initiated the underlying review.  ". . . Commerce cannot interpret an antidumping order in a manner contrary to the clear terms that were a consistent part of the investigation . . ." *Allegheny Bradford Corp. v. U.S.* 342 F. Supp. 2d 1172, 1190-91 (Ct. Intl. Trade, 2004).

Thus, since there is no ambiguity in the dumping order, any interpretation (intended or otherwise) of the order by Commerce is impermissible.  Thus, the Section 129 determination was not empowered to interpret the dumping order.  Any conflict between the two documents must be resolved in favor of the order.

For these reasons, all other claims by Commerce are unavailing.

Thus, the initiation of the 2018-2019 administrative review was an *ultra vires* act, void *ab initio,* and Commerce's SII determination is unlawful.

### 3.   ALTERNATIVELY, IF AN ADMINISTRATIVE REVIEW WERE APPROPRIATELY INITIATED, SHANTOU RGFP OPERATES SUBSTANTIALLY THE SAME AS IT DID IN THE LTFV INVESTIGATION.

As a preliminary matter, Commerce's response brief complains that the Plaintiffs' insufficiently cited to the record in making their argument on pages 30-35 of their opening brief. To be clear, Plaintiffs' reference to all statements/decisions made by Commerce refer to four documents in the record: (1) Commerce Memorandum re Preliminary Successor-In-Interest Determination, February 28, 2020,  (C.R. 83; P.R. 136); (2) Commerce Memorandum regarding Affiliation and Collapsing Shantou RGFP and RGFS, April 29, 2020, C.R. 96, P.R. 158); (3) Preliminary IDM, March 2, 2020 (P.R. 134); and (4) IDM for Final Results, December 18, 2020, (P.R. 185).

When Plaintiffs reiterate their own arguments, they are referencing: (1) letter from RGFS/RGFP to Commerce, October 18, 2019 (C.R. 7-8; P.R. 66-67); RGFS/RGFP Case brief, May 27, 2020 (C.R. 102-103; P.R. 175-176); and RGFS/RGFP rebuttal brief, May 20, 2020 (C.R. 101; P.R. 168).

Regarding the substantive issues, Commerce's response brief does not indicate that RGFP's "operations" substantially differed from those in the investigation.

Commerce acknowledges in its brief (at 17) that it analyzes four major areas, changes in (1) management, (2) production facilities, (3) suppliers, and (4) customer base, in addition to other factors which may be relevant.  Ownership and control are not included in the four major categories.  Commerce further acknowledges that its decision is based on the "totality of the circumstances." (Resp. Br. at 27).

First, regarding management, Commerce obfuscates the issue by not addressing "management" but rather "ownership" and "control."   Resp. Br. at 22-23.  Why?  Because Commerce cannot find any changes in management between the 2004 LTFV investigation and 2018-19 administrative review.  It is true that the minority owner, who also has been the general manager of both RGFS and Shantou RGFP since at least 2003, consolidated his ownership and control by purchasing the shares of the former majority owner.  However, since he has been the only manager since 2003, the small change in ownership and control had zero bearing on whether the "operations" of Shantou RGFP were substantially different from those in the investigation. Commerce's argument fails because while it correctly cites (minor) changes in ownership and control, it provided not even a scintilla of evidence to demonstrate that this affected the operations of the company.

Second, regarding the production facilities, Commerce again tries to turn the conversation to something else.  Resp. Br. at 23-24.  Rather than admitting that the production facilities were identical in 2018-19 to 2004, Commerce changes the discussion to products instead.  Without any evidence, Commerce claims that the Shantou RGFP sold different products from that of "Red Garden" (which it excluded from the order in 2013).

> For example, excluded company Red Garden had sold subject
> merchandise to the United States during the investigation; however,
> Shantou RGFP had previously sold non-subject merchandise to the
> United States under the name Shantou JCF, but once the name reverted
> to Shantou RGFP, it again 'processed and sold subject merchandise to
> the United States."

Resp. Br. at 23. This statement is incorrect for two reasons.  First, there is no "Red Garden" and never has been, so comparing Shantou RGFP to a fictitious company simply makes no sense.  In the original POI, only RGFS had sales of subject merchandise to the U.S.  Shantou RGFP had zero exports in the POI.

Second, Commerce implicitly is stating that the Shantou RGFP in the investigation (which it refers to as "Red Garden") did not sell any non-subject merchandise in the LTFV investigation since it does not mention it, but it later sold non-subject merchandise after the order.  The sale of non-subject merchandise during the original period of investigation ("POI") in 2003 (a) is not on the record of the underlying review, and (b) in fact, was not on the record in the 2004 LTFV investigation since Commerce never asked Shantou RGFP or RFGS to report whether they had any non-subject merchandise sales to the U.S. or to any other country.  Thus, this entire comparison by Commerce (a) not only is factually incorrect, but (b) not part of its standard procedure and cannot substitute for the fact that the production facilities were the same in both periods.

Third, Commerce addresses whether supplier relationships were the same in 2018-2019 as in the LTFV investigation 15 years earlier.  Resp. Br. at 24.  Plaintiffs had reported in the review that they frankly did not know whether the suppliers in 2018-2019 were the same as in 2003 (original POI), since they could not find the records from 2003.  Thus, even though there is no hard evidence either way, Commerce simply speculates that "the lack of information did not support Shantou RGFP's claim that it had continued to operate as a successor-in-interest of Red Garden."  *Id.*  Equally, the lack of information on suppliers does not constitute substantial evidence on the record to support Commerce's speculation.  Simply put, there is no evidence on the record to suggest that any possible supplier changes substantially influenced Shantou RGFP's operations.

 Moreover, what company over a 15-year period has identical suppliers?  International trade is extremely fluid, both with suppliers and customers.  Just as the Commerce Department does not operate differently even though its employee base may be much different, so, too, there

is not even a scintilla of evidence to even remotely demonstrate that the suppliers influence

operations of Shantou RGFP either in 2003 or 2018-19.

Fourth, regarding customers, Commerce makes the following argument.

> Moreover, record evidence demonstrated that Shantou RGFP's
> customers included several new companies, which was drastically
> different than Red Garden's customer base during the investigation. *See*
> SII Memo at 10.  Commerce explained in the final results that this
> 'significant increase in the customer base' 'is a marked contrast to the
> situation during the period examined in the {less-than-fair-value]
> investigation. IDM at 22.

Resp. Br. at 24.  This is not true.  For subject merchandise, in the LTFV investigation, RGFS and

Shantou RGFP sold only to one customer: its majority owner (or one of its affiliated companies).

In the 2018-19 review, again, Shantou RGFP sold subject merchandise only to a company

affiliated with the same (former) majority owner.  Thus, in both periods, there was only one U.S.

customer for subject merchandise, and it was owned by the same parent company.  Thus, the

customer base is identical in both periods.

Moreover, despite the copious amounts of evidence provided by Shantou RGFP

regarding the reasons for its interim name change, (identifying the reason for the change being

that its name was similar to that of its landlord, which was under attack by many creditors),

Commerce chose to ignore substantial evidence on the record and, instead, substitute its own

speculation.

Thus, Commerce's argument that Shantou RGFP provided no information to support its

reasons for temporarily changing its name is incorrect. "Plaintiffs do not, however, provide any

record evidence to counter Commerce's finding that the name changes occurred to take

advantage of changes in the cash deposit rates."  *Id.* at 26.  As documented in Shantou RGFP's

numerous submissions in the underlying review, as well as its case brief, summarizing those

reasons, and in its opening brief, it fully explained its reasons for changing its name.  Thus, Commerce's statement in this regard is incorrect.

Thus, the totality of the circumstances shows only one change: the general manager of Shantou RGFP consolidated his ownership of the company by buying out the former majority owner (its customer).  This, plus substantial evidence on the record amply demonstrates no change in management, no change in address, no evidence of change in suppliers, and no change in U.S. customer base of subject merchandise.  The only reasonable conclusion is that Shantou RGFP in 2018-2019 is not only the successor-in-interest to itself in 2004, but the same company, with the same business license, etc., as it was when the dumping order was issued in 2005.

> **4. COMMERCE'S DEACTIVATION OF THE COMBINATION RATES IN THE SECTION 129 DETERMINATION WAS *ULTRA VIRES*, SINCE THEY WERE NEVER IMPLEMENTED UNDER THE DUMPING ORDER.  THIS IS A CLEAR MISINTERPRATION OF THE DUMPING ORDER.**

Commerce cannot deactivate that which was never activated.  Commerce argues that it properly deactivated the combination rates for RGFS and Red Garden Food Processing in the Section 129 Determination.  Resp. Br. at 32-34.  Implicit in this statement is that Commerce had activated such combination rates in the antidumping duty order.  However, that never occurred.

Not only were combination rates never implemented, but Commerce specifically addressed this issue in its IDM for the LTFV Investigation.  As stated in Plaintiffs' opening brief, 56.2 Br. at 35-36, the IDM of LTFV investigation, (Comment 3, pp. 18-19), specifically addressed this issue, stating that Commerce was not implementing combination rates.  If never implemented, they certainly cannot be deactivated.

Thus, this is a clear misinterpretation by Commerce of the dumping order.

This issue is extremely important, since it also involves instructions sent to Customs and Border Protection ("CBP").  Regardless of whether Shantou RGFP is successful in this lawsuit, at a minimum, the erroneous CBP instructions will hurt Shantou Red Garden <u>Foodstuff</u> Co., Ltd.'s ability to export, since it is under no constraint to buy from any producer in China. Moreover, while the dumping order was published in February 2005, Commerce, as a matter of policy, did not start requiring combination rates until two months later.  *See* Policy Bulletin 05.1, dated April 5, 2005.  If Shantou RGFP prevails in this matter, Commerce also should send revised instructions to CBP stating that Shantou RGFP is (a) excluded from the antidumping duty order, and (2) is not limited to dealing with only certain companies in China.

     **5.  TRUCK REVENUE IS REVENUE, NOT AN EXPENSE, REGARDLESS HOW COMMERCE INTERPRETS IT, AND SHOULD BE NOT BE DEDUCTED FROM GROSS UNIT PRICE.**

Commerce's response brief summarizes only half the facts concerning this issue. Commerce fails to recognize that the CNF (cost and freight) price to its customer included truck transportation from the U.S. port to the customer's warehouse.  This is known as a "through rate" since it encompasses freight from the Chinese port to the U.S. customer's warehouse.  The freight company, however, was unable for many sales to provide the last leg of freight: from the U.S. port to the customer's warehouse.  Thus, the customer had to pay separately for this fee. RGFP gave a full response in its January 23, 2020 supplemental Sec. C and D response (C.R. 76-78; P.R. 114), as follows:

> **Since the price term on contracts was "CNF [          ]", that means the packer Shantou RGFP was responsible to deliver the product to the cold storage in [          ] and the expense for TRUCKING the container moving from US port ([                ] was part of that price.  <u>If</u> the shipping line <u>could</u> handle the trucking deliver in destination, Shantou RGFP would pay all-in OCEAN FREIGHT to the shipping line, and there would be no TRUCKING FEE shown separately on any documents. But in the POR, the shipping lines**

19

> **could not handle the truck delivery from US port to [          ]
> cold storage and Shantou RGFP had to arrange the truck delivery
> in other ways and <u>subtracted</u> the trucking fee from the OCEAN
> FREIGHT, making this the _de Facto_ shipping terms CNF US port
> instead of CNF place of delivery (US warehouse).  Since the
> consignee [                    ] could help to arrange the
> trucking delivery from US port to [          ] cold storage,
> Shantou RGFP deducted the truck fee to [
>          ] by <u>deducting the fee from the total transportation
> expense</u>.  Thus, the trucking fee was not an extra expense for
> Shantou RGFP.  Rather, it was part of the contracted
> transportation expense.**
>
>
> **The trucking fee was not paid directly from Shantou RGFP to the
> truck company, instead, Shantou RGFP reduced the truck fee
> charge to [                    ] (deducted on invoice), and
> [                    ] separately hired a truck and paid the
> trucking fee to the truck company in USA. The cost of trucking fee
> USD [     ] per container was deducted by Shantou RGFP to
> [                    ] by deduction on each invoice of
> Shantou RGFP.  We had previously submitted invoices [
>                    ], which had deducted of the TRUCK FEE.**
>
> **Thus, the Truck Fee was a <u>reduction</u> of the transportation expense,
> <u>not</u> a deduction from the gross unit price.**

_Id._  This response also referenced three invoices submitted to the U.S. customer showing these

deductions to the U.S. customer.  Shantou RGFP's response also contained copies of three

invoices which clearly show a deduction in this cost.  Thus, this was a reduction in RGFP's

freight costs.

The problem is compounded because due to Commerce's error, its has already made two

error by deducting this fee not once, but twice, from the gross unit price.  First, it was part of the

ocean freight (through rate) Shantou RGFP reported. That appeared to be appropriate at the time.

Once Shantou RGFP reported TRUCKRVNU, Commerce (contrary to the facts) again deducted

this figure from gross unit price.  Now, to correct this problem, Commerce should do two things:

(1) remove the deduction of TRUCKRVNU from its calculations, and (2) add TRUCKRVNU to

gross unit price.  Only in this way will the problem be solved because the addition of

TRUCKRVNU to gross unit price will offset the original cost of the trucking between the U.S. port and the U.S. customer's warehouse, as originally reported in the ocean freight field.

In addition, the same response reference above contains various documents which support RGFP's arguments.  *See* Exhibits SSA-10 through SSA-12.

Thus, Commerce, by acknowledging only part of the facts, has failed to use substantial evidence on the record.

## 6.  CONCLUSION

For the reasons stated above, Plaintiffs request that the Court issue a remand consistent with the Court's findings, in support of the arguments herein.

Respectfully submitted,

deKIEFFER & HORGAN

/s/ John J. Kenkel
John J. Kenkel
Alexandra H. Salzman
Gregory S. Menegaz
J. Kevin Horgan
Judith L. Holdsworth
1090 Vermont Ave., N.W.
Suite 410
Washington, D.C. 20005
(202) 783-6900
September 3 2021                    *Counsel for Plaintiffs*

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| SHANTOU RED GARDEN FOOD PROCESSING CO., LTD., SHANTOU RED GARDEN FOODSTUFF CO., LTD., and OCEAN BISTRO CORPORATION )))))<br><br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES, )<br>)<br>Defendant. )<br>)<br>AD HOC SHRIMP TRADE ACTION )<br>COMMITTEE, )<br>)<br>Defendant-Intervenor. ) | Court No. 20-03947 |

## CERTIFICATE OF COMPLIANCE

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 6,364 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Respectfully submitted,

/s/ *John J. Kenkel*
John J. Kenkel
Alexandra H. Salzman
J. Kevin Horgan
**deKieffer & Horgan, PLLC**
Suite 410
1090 Vermont Ave., N.W.
Tel:   (202) 783-6900
Fax:   (202) 783-6909
Email: jkenkel@dhlaw.com
Counsel for Plaintiffs

Dated: September 3, 2021